## LAMPREY *v.* PIKE and others.

(*Circuit Court, D. Minnesota.*   June Term, 1886.)

1. **JUDGMENT—DECREE OF STATE COURT—ESTOPPEL—RES ADJUDICATA.**
   Where a decree has been obtained in a Minnesota state district court against non-resident defendants, in a suit begun by the publication of summons, and, upon their appearance within one year from the time judgment was rendered, an order was made by the district court reopening the case, and permitting the defendants to come in and defend, and afterwards another suit was brought and transferred to the United States circuit court, *held*, that the order allowing defendants to come in and defend nullified the decree as a judgment *res adjudicata*, and cannot be relied upon as concluding the parties.

2. **SAME—DOCKETING JUDGMENT—DECIPHERING NAME ON DOCKET—NAME TO BE READ IN CONNECTION WITH CONTEXT.**
   A transcript of judgment of the Ramsey county district court, docketed in Dakota county, did not have the defendant's name legibly and correctly spelled. Afterwards an execution, which described the name correctly, issued on the judgment, and the sheriff levied upon the land which he intended to levy upon by virtue of the judgment, and sold it as the land of defendant, and made his return, and gave his deed to the purchaser. *Held*, that all these facts should be taken into consideration in deciphering the name on the judgment docket, and that the judgment was properly recorded, and that the sale under it was valid.

3. **DEED—AFTER-ACQUIRED TITLE INURES TO GRANTEE—COVENANT OF TITLE—LIEN OF JUDGMENT.**
   A conveyance, with covenant of title, made by a grantor who has a bond for a deed, and before he obtains the legal title, vests the legal title in the grantee *eo instanti* when the grantor obtains it, and there is no space of time in which the lien of a judgment obtained against said grantor, after the conveyance was made, can attach against the land.

In Equity.
*U. L. Lamprey*, for plaintiff.
*Williams & Goodenow*, for defendant.

MILLER, Justice.   This is a chancery suit, brought originally in the state court, and transferred to this court.   It was an action under the statutes of the state of Minnesota to quiet title to real estate in a case where the possession was not in either party.   Those statutes exist throughout all the western states, as far as I know, and the intention of the framers of them generally was that an action in the nature of an action of ejectment should be brought, and the proper issues made, to determine the state of the title, and to quiet the title. The supreme court of the United States has held that while these may be called actions of ejectment in the state courts, inasmuch as the remedy to be applied, and the right asserted, are essentially of an equitable character, in the federal courts they are to be treated as bills in chancery, in the nature of a bill to quiet title.   This suit is brought against persons, some, or perhaps all, of whom are non-residents, though in this case they have appeared and answered.   The plaintiff relies upon two propositions to justify a decree against the defendants to quiet his title.   The first of these is that the records which he produces, the deeds of conveyance, and derivation of title

from the United States to him, show that he is the holder of the legal title to the property in controversy. He also produces in his bill, and relies upon, a judgment of the district court of Ramsey county, in which court he had brought a similar action, and obtained a decree quieting his title. If that suit had ended there with a decree in his favor, plaintiff need not have proceeded further, and there would have been no necessity for this suit; for it appears that the proper publication was made in accordance with the statutes of the state of Minnesota with regard to unknown or absent defendants. But these parties, who are interested here, and are defendants in this case, appeared in that court within a period of one year from the time when the judgment was rendered, and on their appearance the order of the court, so far as they were concerned, was practically set aside; or, at least, an order was made that the case should be reopened, and they be permitted to come in and defend. As far as we are informed, that order remains, and no further proceedings have been taken in the case. It seems to us, however, very plain that that nullifies the the order as a judgment of *res adjudicata* against those parties who are permitted to come in and defend. It cannot be relied upon as concluding the parties, when, by their appearance within that time, they are permitted to defend; and it goes to show that this is not, as to them, a conclusive decree, and that the judgment may be set aside.

Then, coming to the consideration of the case on its merits, we are satisfied that the plaintiff shows a regular derivation of title from the government of the United States to the land and lots in controversy; but the defense sets up a sale of those lands under a judgment against former owners by the name of Ambs and Whitman, in each of whom at one time an interest was vested, according to the evidence, by title from those who had held it. The lands lay in Dakota county at the time that judgment was rendered in Ramsey county against Ambs and Whitman. An attempt was made, under the statute of the state of Minnesota, to have a transcript of that judgment filed in the court of Dakota county, and docketed in that court. A sale was made under the judgment of the Ramsey county court on an execution issued to the sheriff of Dakota county, and these defendants claim that the land was purchased by their ancestor Pike, who was the plaintiff in the judgment suit, and who got a sheriff's deed regular on its face, and that the title through him is in them.

The question involved is one of some difficulty, owing to the fact that there is a dispute whether the judgment was correctly placed on the docket of the Dakota county district court, in regard to the spelling of the names. A photograph of the docket entry is produced to us to show that the name as found in that entry is not Ambs, but is something else. It is, perhaps, as difficult to say what else it is, as to say it is Ambs. But there are two or three matters to be considered about that, apart from the mere difficulty of deci-

phering what letters are used. In the first place, are such solemn instruments between parties as deeds of conveyance and contracts to be defeated because by the spelling, or by the omission or insertion of a letter which does not affect the sound, or because, in many instances, a very good lawyer has made a very bad script, you cannot exactly read the words? Every one knows that in those cases we go back and read the context, and through that we are enabled to read what word was written; that is, having read what is behind and what is before, we arrive at what the word that should be there is. This is according to the experience of every lawyer, under such circumstances. These are our views of this case, although it is argued otherwise; and when we come to consider that this is a transcript of a judgment of the Ramsey county district court, placed upon the judgment docket of Dakota county; that an execution issued on that judgment from Ramsey county, which describes the names of the parties so that there can be no mistake about them; that the sheriff levied upon the land which he intended to levy upon by virtue of the judgment, in which he says it was Ambs' land, and says he sells it as Ambs' land; and, added to that, there is a deed, and also a return, which the sheriff makes,—then, bring all these together, and compare them with this docket, and we do not think that any sensible man would hesitate to decide that it is Mr. Frederick Ambs whose name is placed upon that docket. We are therefore of opinion that that judgment was properly recorded in Dakota county; that the sale under it was a valid sale of all the interest which Frederick Ambs and August Whitman had at that time in the land in controversy.

It appears to us that there is no reason to doubt that Ambs had a title to four of the lots in question which could be sold, and which were subject to that execution; that as to those four lots the bill of the plaintiff asking that his title may be established must be dismissed, and the title declared to be in the defendants in this suit. But with regard to the remainder of the property, which is much the larger portion, it appears that, long before this judgment was rendered, Mr. Frederick Ambs had made a conveyance to Peter Ambs of the whole land, except these four lots, and that this conveyance was put on record before this judgment was rendered. It is true that Frederick Ambs afterwards acquired the legal title to that property. He had a bond, however, for the title when he conveyed to Peter Ambs. It is insisted by defendants here that the title, in passing through Frederick Ambs, against whom there was this judgment, became affected with the lien of that judgment. But we are of a different opinion. We believe the true doctrine to be that in this case, by reason of the conveyance that Frederick Ambs made to Peter Ambs before he got the title, when he did get it, it inured to the benefit of Peter Ambs; and that is the law of the state of Minnesota. There is some question raised as to whether that is the law of Minnesota except where there

are covenants of title; but we are satisfied that here there was a covenant of title; that it was an ordinary deed of bargain and sale with such covenant, the result of which was that *eo instanti,* when Frederick Ambs acquired the legal title from the party against whom he held this bond, it vested in Peter Ambs, his grantee, the title under the deed made long before. There was no space of time when this lien could attach. The making of the deed, through Frederick Ambs, transferred at once, instantly, without a moment's delay, the title, and thus was acquired by Peter Ambs, to whose benefit it inured. The lien of the judgment did not attach while the title was in that transition state. The result of that is that the plaintiff in this case, who claims under that deed, has a just right; and that the title set up under this judgment should be declared null and void; and that the plaintiff, as far as this portion of the property is concerned, is entitled to the relief claimed, as against those defendants holding under that judgment sale; and that is the decree of this court.

There is also a defense of a tax title, which Judge NELSON has examined, and which he states establishes no title. I think it was shown that that was not a valid title, and the plaintiff should be relieved as against it. Therefore the relief is complete against the defendants, except as to those four lots already described.

A decree will be entered accordingly.