### N. M. L. PLEDGER v. SOVEREIGN CAMP WOODMEN OF THE WORLD.

Delivered October 28, 1897.

**Mutual Benefit Insurance—Delivery of Certificate—Change in Health of Applicant.**

The refusal of the clerk of a benevolent society to deliver a certificate to an applicant whose application has been approved and who is not in default in any manner, because the health of such applicant has changed, will not, in the absence of anything to authorize such refusal, prevent a recovery by the beneficiary.

APPEAL from Smith. Tried below before Hon. GORDON RUSSELL.

*Lindsey & Butler* and *D. M. Reedy,* for appellant.—When an insurance company, or order, sends a policy or beneficiary certificate to its agent, with instructions to collect the premium and deliver the policy, unless he has instructions to not deliver if the health of the applicant is changed, he can not refuse to accept the premium or deliver the policy because of changed condition of the health of insured. 21 Minn, 215; 18 Minn., 449; 56 Ga., 339; 5 Ind., 96; 30 Fed. Rep., 902; Niblack on Ben. Soc. and Acc. Ins., p. 275; 1 Bacon on Ben. Soc., 539, 544.

*Marsh & McIlwaine* and *J. W. Fitzgerald,* for appellee.—When the contract of insurance entered into by and between the society and one of its members provides that it shall not become operative until the policy or certificate has been delivered, the delivery of the policy is a condition precedent, and the contract is not binding until the policy or certificate is actually delivered. 28 Fed. Rep., 705; 30 Fed. Rep., 545; 53 Fed. Rep., 208; Bacon on Ben. Soc. and Life Ins., sec. 272; Niblack on Ben. Soc., 230.

GARRETT, CHIEF JUSTICE.—This action was brought by the appellant against appellee to recover upon a beneficiary certificate issued by the appellee to her deceased husband, G. C. Pledger, who was a member

of Orchard Camp No. 72, located at Tyler, Texas. The case was tried by a jury, and a verdict was returned, by direction of the trial judge, in favor of the appellee, and judgment in its favor was rendered thereon, from which this appeal has been taken.

There is no controversy about the material facts in the case. From November 15 to about December 25, 1895, the appellee, by deputies, was engaged in organizing a camp or lodge of its order in Tyler, Texas. The deputies procured the applications of 143 persons, and organized them into a lodge under an open charter. George C. Pledger, the husband of the appellant, was one of the applicants. He made out his application on November 15, 1895, on an original form provided by the appellee order, and as required by the rules of the order, and paid to the deputy organizer, to whom it was delivered, the fee charged for new members, $10. He met with the other applicants at the lodge room on the designated meeting night, was examined by the camp physician, and for this examination paid the required fee of $1. He stood a successful examination, was balloted upon by the lodge, and was elected and obligated December 5, 1895, becoming a member of the order. All this was done in full accordance and compliance with the constitution and laws of the order.

His application, together with the report of the medical examination, was then forwarded to J. B. Frost, head consul at Atlanta, Ga., and by him was sent to the sovereign clerk, at Omaha, Neb. It was examined and approved by the sovereign physician, W. O. Rogers, December 17th. A beneficiary certificate for $3000, as a beneficiary fund, and the further sum of $100, for placing a monument at his grave, was issued to the said G. C. Pledger, payable to his wife, Lillie Pledger, the appellant, by the sovereign clerk, and countersigned by the sovereign commander, December 18th. This certificate was then sent to Head Consul Frost, who signed it December 21, 1895, and returned it to the clerk of the camp at Tyler, Texas, and the consul commander of the camp signed it December 27, 1895. The certificate had then been issued in full compliance with the constitution and laws of the order, and was ready for delivery to Pledger upon payment of the advance assessment and dues of the local camp, as required by section 69 of the constitution and laws, which amounted to $2.65. The assessment was the advance or January assessment, amounting to the sum of $1.50, and the dues were sovereign camp dues, 15 cents, and camp current dues, $1, total $2.65. By section 120 of the constitution and laws, Pledger could not have been suspended for failing to pay the assessment and dues until February 1st.

The certificate had been in the clerk's hands for delivery about six weeks when Pledger died. The clerk had notified him that he had his certificate ready for him, but Pledger each time put him off a day or two. The clerk had been delivering certificates to these charter members up to the time of Pledger's death, and delivered some of them after he died. They were delivered whenever and wherever the money was paid. Pledger was taken sick on the 28th of January, 1896, with measles. On the 16th day of February he was convalescent, but had a relapse on the 17th, and

then sent for two of his friends who were the committee of the lodge to attend to and care for the sick members, and requested them to see the clerk and pay his assessments and dues, and get his certificate. These men saw the clerk that day and offered to pay the amount of dues and assessments, and requested the delivery of the beneficiary certificate. The clerk refused, on account of the health of Pledger. They tendered him the amount, and demanded the certificate, but he still refused. The clerk had no instructions whatever as to the delivery of the certificate, except such as were contained in the constitution and laws. He refused to accept the amount and deliver the certificate, because of the changed condition of Pledger's health. There is nothing in the constitution and laws or the beneficiary certificate that required or authorized the clerk to hold back the certificate on account of the changed condition of the health of the member.

The defense is based solely upon the ground that the delivery of the certificate was a condition precedent to the payment thereof in case of death. As bearing upon this question, the constitution and laws contained the following:

"Sec. 69. The liability of the sovereign camp or head camp, for the payment of benefits upon the death of a member, shall not begin until after his application shall have been accepted by the sovereign physician or head physician, his certificate issued, and he shall have, first, paid all the entrance fees; second, paid his advance assessment; third, paid the sovereign camp or head camp general fund dues for the month and the camp dues for the current term; fourth, paid the physician's fee for medical examination; fifth, having been obligated or introduced by a camp or authorized member in due form; sixth, had delivered to him his beneficiary certificate.

"The foregoing is hereby made a part of the consideration for and are conditions precedent to the payment of benefits in case of death.

"Sec. 70. The noncompliance with or nonperformance of any of the requirements in the preceding section, upon the part of the applicant, shall be an absolute bar to any claim upon the beneficiary fund of the order, under or by virtue of any beneficiary certificate that may have been issued in his name or by reason of any preliminary steps he may have taken to entitle him to same; and no deputy, officer, or any member of the sovereign camp or head camp or camps has authority to change, alter, modify, or waive the foregoing requirements or the consequences thereof in any manner."

By section 143 it is provided that no member can become delinquent for nonpayment of assessments or dues while sick. At the time the assessments and dues were tendered the clerk, Pledger was not delinquent, and it was not claimed that he was. If he had remained in good health, he would not have become delinquent until February 1st, for he would have had until February 1st to pay them in that case. The tender of assessments and dues on behalf of Pledger to the clerk entitled him to the delivery of the certificate. The money having been tendered and refused,

it was the same as though it had been paid. We do not think that the actual delivery of the certificate was made a condition precedent by the constitution and laws of the order, and we are borne out in this construction of section 69 by the language of section 70, in which it is stated that the noncompliance with or the nonperformance of any requirement in the preceding section on the part of the applicant, should be an absolute bar to any claim on the beneficiary fund of the order. If it had been intended that the actual delivery of the certificate to the member was necessary, it could have been so stated. When the money was tendered there remained nothing to be done on the part of Pledger, and it was the duty of the clerk to deliver the certificate. Equity will treat that as done which ought to have been done.

Since there is no controversy about the facts, and as the facts authorize a recovery by the appellant, the judgment of the court below will be reversed, and judgment will be here rendered in favor of the appellant for the amount provided for by the certificate.

*Reversed and rendered.*

. Writ of error refused.