ELIZABETH WOOD and S. J. POOLEY, Guardian of CLIFTON D. WOOD, and HAZEL D. WOOD, v. BROTHERHOOD OF AMERICAN YEOMEN, Appellant.

**Beneficial insurance:** ACTION UPON CERTIFICATE: REMEDY. A certificate of insurance which provides for indemnity in an amount to be realized from a single assessment not exceeding a specified sum is enforceable only in equity, but one stipulating for the payment of a stated sum without reference to an assessment is enforceable at law.

**Same:** SUBSTITUTED CERTIFICATE: DATE: FORFEITURE. Where a new beneficial certificate of insurance, issued as a substitute for the original certificate and bearing the date of the original certificate, stipulated that suicide of the insured within three years from the date of the certificate would invalidate the same, the date referred to has reference to the time specified in the original certificate; and the suicide of the member after the lapse of three years from the date of the original certificate did not invalidate the substituted certificate.

**Same:** CHANGE IN BENEFICIARY. Where a member of a beneficial insurance society having the absolute right under the bylaws to change the beneficiary does all that is necessary to effect a change, an equitable assignment for the benefit of a new beneficiary is effected, even though the member dies before the issuance of the certificate making the change; and the new beneficiary can enforce the certificate.

**Same:** ISSUANCE OF NEW CERTIFICATE. Where a member of a beneficial insurance society surrenders his certificate for the sole purpose of making a change in the beneficiary, the society can not change the conditions of the contract without the assent of the member; and where the certificate is surrendered solely for that purpose with a request that the insurance be continued in favor of the new beneficiary under a new certificate, in other respects identical with that surrendered, a delivery of the new certificate is not essential to the validity of the contract. But if the new certificate, instead of being responsive to the application for the

change, contains new or different conditions from those of the original certificate, it will not be effective until the assured has indicated his acceptance of the new conditions.

*Appeal from Polk District Court.*—Hon. Hugh Brennan, Judge.

Tuesday, June 14, 1910.

On motion, judgment was entered for plaintiffs on the pleadings. The defendant appeals. *Reversed.*

*E. C. Corry* and *Dunshee & Haines,* for appellant.

*Ryan & Ryan,* for appellees.

Ladd, J.—After the issues had been made up, judgment, on motion of plaintiffs, was entered in their favor for the amount of the certificate of insurance less deductions for the reserve fund. Necessarily, this ruling was based on facts conceded by the pleadings, and these may be stated. The defendant is a fraternal society organized under chapter 9 of title 9 of the Code, and as such delivered to Geo. D. Wood a certificate of insurance, May 31, 1899, with his then wife, Ella F. Wood, named therein as beneficiary. The certificate in terms made the application part thereof, and agreed "that in event of my death by suicide, whether sane or insane, any certificate issued upon said application by said order shall be void." A by-law allowed any member to change beneficiaries if the assured pay to the correspondent a fee of fifty cents and deliver to him the benefit certificate with written surrender on the back thereof and directions as to the change desired and name and relationship of the beneficiary. "The correspondent shall then forward the certificate with the fee of fifty cents to the chief correspondent, who shall at once issue a benefit certificate as requested." Ella

F. Wood died, and, in accordance with this by-law, the insured on November 21, 1903, surrendered the certificate to the local correspondent and made a written request for the change in words following: "I, George D. Wood, the same person to whom this certificate was issued, hereby authorize the officers of the castle to cancel this certificate and issue a new one for $3,000.00— (payable to Elizabeth Wood, Clifton D. and Hazel D. Wood, wife and children, share and share alike the survivor or survivors.) I declare that I have complied with all the laws of this fraternity, and all its regulations, in the presence of these witnesses whose names appear below." This was accompanied with the fee required, and with the certificate was forwarded to the chief correspondent, who on December 3d issued a new certificate with the names of the above persons inserted as beneficiaries, among other things stipulating that "if said member shall die by his own hand, whether sane or insane, within three years from the date of this certificate, . . . then this certificate shall be null and void." The monthly assessment was fixed therein at $1.85, instead of $1.70, as in the original certificate. In the original certificate, upon the death of the assured, payment of "the amount realized from one assessment not to exceed $3,000" was stipulated, while in the new certificate a lump sum of $3,000 was to be paid subject to this provision, which was not in the original: "That should said member die before having lived out his expectancy of life, based on his age at entry, according to the American Experience Tables of Mortality, there shall be paid into the reserve fund of this association out of the proceeds of this certificate otherwise payable to the beneficiary a sum equal to the amount of ten assessments per year at the rate last paid by the member for the unexpired period of such life expectancy, based on his age at entry, and any accident or disability benefits to which he may become entitled shall be sub-

jected to proportionate deduction for the reserve fund, to be used for the payment of assessments in any year in excess of the amount required for the payment of six deaths to the thousand members in good standing." The date at the end of the last certificate was the same as that on the first, May 25, 1899. The new certificate was mailed to the local correspondent, who received it December 3, 1903; but whether it was ever delivered to the assured, who died the next day, was put in issue by the pleadings. In ruling on the motion the court must have proceeded on the theory that it was not delivered, and also that the allegation of the answer that the assured's death was suicidal was true.

I.  It is apparent that no recovery can be had on the original certificate alone, for by its terms no indemnity is payable upon death resulting from suicide. Moreover, the action is at law, and it provides for the payment of an assessment only which could be enforced in equity alone. *Sleight v. Supreme Council,* 121 Iowa, 724. The new certificate stipulates for the payment of a lump sum without reference to an assessment, and, under numerous authorities, the remedy on it is at law. *Van Norman v. Modern Brotherhood of America,* 134 Iowa, 574. As seen, this differs materially from the first certificate, and with respect thereto appellant contends: (1) That it never became effective save in changing beneficiaries because never delivered to the assured; (2) nor accepted by him in the manner prescribed therefor; (3) nor was defendant notified of such acceptance; and (4) even if all this had happened, three years had not elapsed after its date, and therefore the suicide clause obviated all liability.

1. BENEFICIAL INSURANCE: action upon certificate: remedy.

II.  The last ground may be disposed of first and the previous three together. The clause in the last certificate relating to suicide invalidates it if suicide is committed "within three years from the date of this certi-

ficate." This should be construed to have reference to the time specified in the instrument. As applicable to papers, Webster gives two defini- tions of "dates": "(1) That statement or formula affixed to a writing, inscrip- tion, coin, etc., which specifies the time (as day, month, and year) and often the place of execution or. making. (2) The point of time at which a transaction or event takes place or is appointed to take place." The date is often an important part of the instrument, and, when coupled with another provision relating to when something is to be done, should not be disregarded. Especially is this true where the instrument is executed as a substitute for another and the date of the original designedly inserted. As said in *Bement v. Trenton, etc., Mfg. Co.,* 32 N. J. Law, 513: "The primary signification of the word 'date' is not time in the abstract, nor time taken absolutely, but, as its derivation plainly indicates, time given or specified, time in some way ascertained or fixed; this is the sense in which the word is commonly used. When we speak of the date of a deed, we do not mean the time when it was actually executed, but the time of its execution, as given or stated in the deed itself. The date of an item or of a charge in a book account is not necessarily the time when the article charged was in fact furnished, but simply the time given or set down in the account, in connection with such charge." Moreover, if the. instru- ment is open to different constructions, that most favora- ble to the insured should be adopted. Death having occurred more than three years subsequent to the date of the certificate, that it was suicidal did not constitute a defense to the second certificate.

III. The petition alleged the delivery of a new cer- tificate to the assured. This was denied by the defendant, but it admitted that it had been mailed to the local correspondent. Were the question merely whether these

2. SAME:
  substituted
  certificate:
  date:
  forfeiture.

plaintiffs might recover as beneficiaries, it could be easily

3. Same: change in beneficiary.

solved. The assured had done all that was required of him to effect a change of beneficiaries. He had the absolute right under the by-laws to make the change proposed, and, even though he had died before the new certificate issued, an equitable assignment of the benefits would have been effected, and these plaintiffs might have enforced their right to, the indemnity unless for some other reason the certificate had become invalid. *Hirschl v. Clark,* 81 Iowa, 200; *Shuman v. A. O. U. W.,* 110 Iowa, 642; *Lorscher v. Supreme Lodge Knights of Honor,* 72 Mich. 316 (40 N. W. 545, 2 L. R. A. 206); *Pledger v. Sovereign Camp Woodmen of the World,* 17 Tex. Civ. App. 18 (42 S. W. 653); *Berkeley v. Harper,* 3 App. Cas. (D. C.) 308; *Bowman v. Moore,* 87 Cal. 306 (25 Pac. 409); *National Am. Ass'n v. Kirgin,* 28 Mo. App. 80; *Luhrs v. Luhrs,* 123 N. Y. 367 (25 N. E. 388, 9 L. R. A. 534, 20 Am. St. Rep. 754); *Waldum v. Homstad,* 119 Wis. 312 (96 N. W. 806). The rule requiring the surrender of the certificate, and for that matter most of the rules with respect to changing beneficiaries, is intended for the benefit of the insurer. *Simcoke v. A. O. U. W.,* 84 Iowa, 383.

Upon the surrender of a certificate of insurance for the purpose of changing beneficiaries, the insurer is not at liberty to alter, add to, or take from other conditions

4. Same: issuance of new certificate.

of the contract in the new certificate and thereby bind the insured without his assent. By surrendering the policy or certificate, with the request that the insurance be continued in favor of other and different beneficiaries, the insured impliedly applies for a new policy or certificate, substantially identical with that surrendered, except that the indemnity stipulated be payable to persons other than those designated in the first policy or certificate. *Mallette v. Assurance Co.,* 91 Md. 471 (46 Atl. 1005); *Insurance Co. v. Walsh,* 54

Ill. 164 (5 Am. Rep. 115). In such a contract delivery is not essential, for the proposal has been accepted and the agreement is complete. See *McCully v. Phoenix Mutual Life Ins. Co.*, 18 W. Va. 782; *New York Life Ins. Co. v. Babcock*, 104 Ga. 67, (30 S. E. 273, 42 L. R. A. 88, 69 Am. St. Rep. 134). But if the policy or certificate, instead of being responsive to the application, contains conditions in addition to or differing from those of the certificate originally surrendered, it amounts to no less than a new or counter proposition and will not take effect until the assured has indicated in some way his acceptance of the new terms. See *Stephens v. Insurance Co.*, 87 Iowa, 283; *Key v. National Life Ins. Co.*, 107 Iowa, 446; *Armstrong v. Mutual Life Ins. Co.*, 121 Iowa, 362.

Assuming, as we must, that the certificate had never reached the insured, there could have been no acquiescence on his part in the change from the certificate surrendered whereby the monthly assessments were increased and the indemnity decreased by the reservation clause. As to these, there had been no agrement. Mutual assent, the meeting of the minds, as essential to a contract of insurance as any other, was utterly wanting. *Mutual Life Ins. Co. v. Young*, 90 U. S. 85 (23 L. Ed. 152); *Yore v. Bankers', etc., Ass'n*, 88 Cal. 612 (26 Pac. 514); *Robinson v. U. S. Ben. 'Soc.*, 132 Mich. 695 (94 N. W. 211, 102 Am. St. Rep. 436). This conclusion is not obviated by the circumstance that certificates such as the last were issued to persons becoming members after January 1, 1902, for deceased was already a member; nor is there any basis for a plea in estoppel because of defendant pleading the new conditions, for it does not rely on these as a defense, as suggested, but on the fact that the assured had never assented thereto, and for this reason the certificate did not become effective as a contract. Plainly enough, under these well-settled principles, the substituted beneficiaries might

not maintain an action on the second certificate, the facts being as conceded by the pleadings, and the defense of suicide was fatal to recovery on the first certificate.— *Reversed.*