MODERN WOODMEN OF AMERICA v. MRS. GETSIE OWENS.

Decided April 20, June 15, 1910.

**1.—Life Insurance—Warranty—Good Faith.**

An express warranty of the truth of a representation made by an applicant for life insurance whose certificate is made void if it is untrue, must be held fatal to recovery in such event. A plea that he believed it to be

true and acted in good faith in making it should have been held bad on demurrer.

### 2.—Same—Statute—Benefit Society.

The Act of March 27, 1903, Laws Twenty-Eighth Leg., p. 94, making insurance policies void for misrepresentations only when the matters in question were material to the risk, did not apply to beneficiary societies, and their contracts in this particular are still governed by common law.

### 3.—Insurance—Application—Representations as to Health.

The applicant for life insurance by certificate in a benefit company, warranting the truth of all statements made by him, declared, in answer to questions by the medical examiner that he was then of sound body and health, free from disease, and had never had typhoid fever. On the evening of the same day he complained of headache, was confined to his bed three days later, and two days subsequently his disease was pronounced to be typhoid fever, from which he died before the delivery of the certificate to him. Though the result showed that he must have been infected with the germs of typhoid when he made the answers in question, they could not be pronounced false within the meaning which the parties would reasonably attach to the question and answer.

### 4.—Insurance—Delivery of Certificate—Delay.

The contract of insurance in a benefit society provided that it should not take effect until delivery of the certificate to the applicant in good health. He became sick immediately after his application and examination and died about 23 days later. The certificate issued by the authorities of the society in a distant city, some delay being caused by return of papers for correction, reached the clerk of the local "camp" or chapter on the day before applicant's death, and was not delivered to him. Held, that a plea that the association wrongfully delayed the issuance and delivery of the certificate, whereby it failed of delivery to him in his lifetime, should have been held bad on demurrer. Delay could not create a contract which by its own terms was to take effect only on delivery, and delivery to applicant in good health, which was necessary to its validity, could not have been made had there been no delay.

### 5.—Same—Continuing Warranty.

An applicant for certificate of insurance having represented and warranted himself to be in good health, and the terms of the contract providing that it did not take effect till delivery of the certificate to him in good health, there was a continuing warranty of this condition of health up to the time of delivery. The applicant having become mortally ill of typhoid fever before the certificate was issued and having died thereof before delivery was made, the society having no knowledge of his condition when it was issued and forwarded to the clerk of the local camp, and the latter no authority to waive any of the terms of the contract or deliver it to applicant while sick, there was no completed contract entered on, a peremptory instruction in defendant's favor should have been given, and a recovery by the beneficiary is reversed and judgment rendered for defendant on its appeal.

ON MOTION FOR REHEARING.

### 6.—Same—Breach of Warranty—Waiver.

The application for certificate of insurance dated from the time it was made, though subsequently returned for correction, and the warranty of good health was not waived by insurer by the action of its agent, the examining surgeon, where the latter had no knowledge that applicant was infected with typhoid fever at that time. But if the application be considered as dating from the time of its correction, when the surgeon knew that such fever had developed, his act in accepting it and concealing the applicant's condition was a fraudulent combination by him with the applicant to impose on the asso-

ciation, which did not constitute a waiver of applicant's warranty of his good health.

### 7.—Cases Distinguished.

Mutual L. Ins. Co. v. Blodgett, 8 Texas Civ. App., 45; Gulligan v. Ins. Co., 71 Ark., 103; Pledger v. Woodmen of W., 17 Texas Civ. App., 18; Woodmen of W. v. Carrington, 41 Texas Civ. App., 29; Northwestern L. Asso. v. Findley, 29 Texas Civ. App. 494; Washington L. Ins. Co. v. Berwald, 72 S. W., 436; Knights of P. v. Withers, 177 U. S., 260; Morrison v. Ins. Co., 69 Texas, 353; Woodman of W. v. Dees, 45 Texas Civ. App., 318, discussed and distinguished.

Appeal from the District Court of Bell County. Tried below before Hon. John D. Robinson.

*Benj. D. Smith* and *A. M. Monteith,* for appellant.—Good faith in false warranty immaterial. National Fraternity v. Karnes, 60 S. W., 576; McDermott v. Modern Woodmen of America, 71 S. W., 833; 3 Cooley's Briefs on the Law of Insurance, 1954; May on Insurance, sec. 156; 3 Joyce on Insurance, sec. 1964; 1 Bacon on Benefit Societies, sec. 197.

Delay in handling certificate no waiver. Misselhorn v. Mutual R. F. Life Ass'n, 30 Fed., 545; McLendon v. Sovereign Camp, Woodmen of the World, 64 S. W., 36, 52 L. R. A., 444.

Delivery of certificate to applicant while in good health a condition precedent to its taking effect. Matkin v. Supreme Lodge K. of H., 18 S. W., 306; Lloyd v. Modern Woodmen of A., 87 S. W., 530; McLendon v. Woodmen of the W., 64 S. W., 36, 52 L. R. A., 444; Wilcox v. Woodmen of the W., 76 Mo. App., 573; Driscoll v. Modern B. of A., 109 N. W. (Neb.), 158; Bacon on Benefit Societies, sec. 272; Niblack on Benefit Societies, sec. 142; Joyce on Insurance, secs. 53, 70.

There can be no delivery of a benefit certificate after the death of the insured. Piedmont & A. Life Ins. Co. v. Ewing, 92 U. S., 377; Misselhorn v. Mut. R. F. Life Ass'n, 30 Mo. App., 589; Busher v. N. Y. Life Ins. Co., 58 Atl., 41; Roblee v. Masonic Life Ass'n, 77 N. Y. Supp., 1098.

Breach of warranty is fatal to the policy, though the insured had no knowledge of the falsity constituting the breach and did not intend to deceive the insurer. Supreme Lodge K. & L. of H. v. Payne, 108 S. W., 1160, 110 S. W., 523; National Fraternity v. Karnes, 60 S. W., 576; Baumgart v. Modern Woodmen of A., 55 N. W., 713; Alabama Gold Life Ins. Co. v. Johnston, 80 Ala., 467; Mutual Life Ins. Co. v. Arhelger, 36 Pac., 895.

The answers in the application for membership constituted continuing warranties, and if they were not true at the time of the issuance of the benefit certificate the said benefit certificate was void by reason thereof. Insurance Co. v. Ewing, 92 U. S., 377; Insurance Co. v. Wolff, 95 U. S., 326; Cable v. United States Life Ins. Co., 111 Fed., 19; Bingler v. Insurance Co., 61 Pac., 672; Whiteley v. Insurance Co., 71 N. C., 480; Thompson v. Travelers' Ins. Co., 91 N. W., 75; May on Insurance, sec. 190; Bacon on Benefit Societies (3d ed.), sec. 274.

An agent can not bind his principal, except by acts performed within the scope of his authority. Sovereign Camp, W. of W., v. Carrington, 90 S. W., 921; N. W. Life Ass'n v. Findley, 68 S. W., 695; Lloyd v. Modern W. of A., 87 S. W., 530; Burdick v. Modern W. of A., 92 Pac., 439; Graves v. Modern W. of A., 89 N. W., 6; Tevis v. Modern W. of A., 117 Fed., 367.

Delay in passing upon the application (even if there had been any, which there was not) will give the applicant no rights as a beneficial member. McLendon v. Sovereign Camp, W. O. W., 64 S. W., 36, 52 L. R. A., 444; Wilcox v. Sovereign Camp, W. O. W., 76 Mo. App., 573; Misselhorn v. Mutual R. F. Life Ass'n, 30 Fed., 545.

There was no waiver of the provisions of the by-laws and contract, nor could there have been. Fitzmaurice v. Mutual Life Ins. Co., 19 S. W., 301; Kempe v. Woodmen of the World, 44 S. W., 688.

*Jas. F. Hair,* for appellee.—No briefs were on file.

JENKINS, ASSOCIATE JUSTICE.—The appellee brought this suit to recover of appellant two thousand dollars, alleged to be due her on a benefit certificate in her favor upon the life of her deceased husband, Walter D. Owens. The appellant is a fraternal insurance association, chartered under the laws of Illinois, and legally doing business in Texas, and was such on the 25th day of September, 1907. On said date a legally authorized representative of appellant organized a camp or lodge of the order at Killeen, in Bell County, of which camp the said Walter D. Owens became a charter member, was duly initiated into said camp and became entitled to all of the benefits that could be conferred upon a member by virtue of being so received. These benefits, as expressly provided by the by-laws of said order, were, in effect, to remain a social member of said order until he should voluntarily withdraw, or be suspended or expelled, and in addition thereto, to make application to the head officers of said order for insurance therein, and, if accepted, upon compliance with the by-laws of the order, he was entitled to receive a benefit certificate which was, in effect, a life insurance policy for the amount therein stated.

On the day that he was elected a member of said order he made a written application for insurance therein for $2,000. Said application provided, among other things, that "this application and the laws of this society shall form the sole basis of my admission to and membership therein and of the benefit certificate to be issued me by the said Modern Woodmen of America; any untrue statement or answer or any concealment of facts, intentional or otherwise, in this application, shall forfeit the rights of myself and those of my beneficiaries to any and all benefits and privileges growing out of my membership in said society. . . . I further agree that the laws of this society now in force, or hereafter enacted, enter into and become a part of my contract of indemnity by and between the member and the society, and govern all rights thereunder. . . . I further declare and warrant that they (his answers) are full, complete, and literally true, and I agree that the exact, literal truth of each shall be a condition pre-

Vol. LX Civil—26.

cedent to any binding contract issued upon the faith of the fore-going answers. . . . I further agree that the foregoing answers and statements . . . are hereby made a part of any benefit cer-tificate that may be issued on this application, and shall be deemed and taken [as] a part of this certificate, and they shall be construed together as one entire contract. . . . And any certificate which shall be issued to me in pursuance of this application shall be deliv-ered to me while in sound health, and in pursuance of the by-laws of the society."

The by-laws provided that members should receive the benefits, etc., "provided all the conditions and requirements contained in the benefit certificate and in the by-laws of this society shall have been fully complied with." The by-laws further provided that "the liability of the society for the payment on the death of a beneficial member shall not begin until . . . a benefit certificate issued as provided by section 28 shall be delivered to the applicant while in good health. The by-laws further provided that no local camp officer should be au-thorized to waive any of the provisions of the by-laws.

Walter D. Owens was examined by the camp physician, and was asked, among other questions, the following: "Are you now of sound body, mind and health, and free from any disease?" To which he answered, "Yes." "Have you ever had any of the following named diseases, . . . typhoid fever?" Answer: "No." He was exam-ined and approved by the camp physician on September 25, 1907. His application was sent off and returned for correction. The correc-tions were made, when it was again sent off and was received and ap-proved by the head physician October 11th; received by the head clerk October 12th; approved by the Supreme Medical Directors on the same day; the certificate was issued October 15th; it was sent to the clerk of the local camp at Killeen and received by him in the after-noon of October 17th. Owens was complaining of a headache on the evening of the day he was examined, September 25th; on the 27th he was in bed sick; on the 30th his physician diagnosed his sickness as typhoid fever, and he died of that disease on October 18th. Shortly before he was examined he had nursed his brother, who died of ty-phoid fever. This statement is sufficient for a clear understanding of the legal issues involved.

Appellee's original petition alleged the regular issuance and due de-livery of the benefit certificate and the death of the insured. Appel-lant, in addition to a general denial, as affirmative grounds of de-fense, alleged: 1st. That said certificate was never delivered in ac-cordance with the contract, in that if there was any attempted delivery of the same, the said Owens was not in good health at the time of such attempted delivery. 2d. That said Owens was not in good health on October 15, 1907, the date of the issuance of said certificate, but then was mortally ill of typhoid fever, and so continued until he died on the 18th of said month, which fact was unknown to appel-lant, and that as soon as it learned of said fact it tendered back $6.25, the same being the full amount paid by said Owens on said application or for said certificate. 3d. That said Owens had typhoid fever at the time he made said application. 4th. That the state-

ments made by said Owens as to his health were continuing warranties, and that if true when the same were made, they were not true when said certificate was issued, and were not true when same was delivered to Owens, if ever delivered, which was not admitted but denied.

To these allegations appellee replied in a supplemental petition, wherein she alleged that at the time Owens made said application "he believed himself to be and was in good health, and his said application was made in good faith," and that the defendant's medical examiner believed that he was in good health. That if said business had been handled promptly by defendant said certificate would have reached the said Owens and been delivered to him before his death.

Appellant filed special exceptions to said supplemental petition, which we will consider in the following order:

1. To the allegation that said Owens believed his answers to be true at the time the same were made, and that he acted in good faith in making the same. Said demurrer should have been sustained for the reason that all of the answers of said Owens were expressly made a part of the benefit certificate, as fully as if written therein, as were also the conditions in the by-laws, and the truthfulness of said answers, as well as the conditions, limitations and requirements of the by-laws were made express warranties in plain and unambiguous language. However harsh the rule may seem at first blush, or in fact may be, it is well settled that an express warranty must be literally complied with, without reference to the knowledge or ignorance, good faith or bad faith, of the party making the same. In no branch of the law has this rule been more clearly declared than in that relating to contracts of insurance. May on Ins., sec. 156; Joyce on Ins., sec. 1964; Bacon on Benefit Societies, sec. 19-7; McDermott v. Modern W. of A., 71 S. W., 836.

The law does not make contracts between parties, but enforces them as made, and when it can be clearly ascertained that a party has expressly warranted a certain thing to be true, if it be shown to be not true, the contract is thereby voided; or rather, such warranty being a condition precedent, no contract was ever made. Our Legislature undertook to relieve against this rule of law by providing that misrepresentations should not constitute any defense to an action to recover on an insurance policy, unless the same were "material to the risk, or actually contributed to the contingency or event on which said policy became due and payable." Act 1903, p. 94, ch. 69, Rev. Stats.; art. 3096aa. But our Supreme Court has held that this Act does not apply to fraternal beneficiary societies (Prætorians v. Hollmig, 100 Texas, 623, 103 S. W., 476); hence as to such societies we are governed by the rules of the common law.

But the rule that warranties must be strictly complied with does not change the rules of construction as applied to contracts generally. "That a statement amounts to a warranty does not exclude enquiry as to what is meant by the statement." Nat'l Fraternity Ass'n v. Karnes, 24 Texas Civ. App., 611, 60 S. W., 578; McDermott v. Modern W. of A., supra. Unless there is some good reason to the contrary, parties to a contract are presumed to mean what they would

reasonably understand each other to have meant, under the circumstances of the case, by the language used. In this case Owens had previously waited on his brother, who died of typhoid fever, but it does not appear from this that he knew that the germs of that disease were in his system and would probably develop in the near future. We take it that his answer that he did not have typhoid fever was true, in the sense that the parties must have understood each other at the time, though a physician may be able to say, from the fact that he had typhoid fever three days later, that the germs of said disease were then in his system and in process of development. "The company did not intend by categorical questions to put on the insured the responsibility of knowing that which perhaps no one, however thoroughly trained in the study of human diseases, could possibly have ascertained." Moulor v. Insurance Co., 111 U. S., 335, 28 L. ed., 450. "Disease implies a substantial attack of illness." Conn. Mut. Life Ins. Co. v. Union Trust Co., 112 U. S., 257, 28 L. ed., 711.

These authorities do not contradict the authorities above referred to, which assert that good faith and want of knowledge will not relieve against a warranty, but they point out a common-sense rule of construction whereby, under certain circumstances, want of knowledge and good faith establish the truthfulness of the statement. All that appellee could have legally proven in reference to this matter could have been proven under her general allegation that the deceased complied with the terms of the contract; and therefore, to say the least of it, this plea was unnecessary.

2. Appellant also specially excepted to the allegation in appellee's supplemental petition, that, if said application had been handled without delay on the part of appellant, the benefit certificate could have been issued and delivered to said Owens prior to his death. This exception should have been sustained. An insurance company may determine for itself whether or not it will accept an application for insurance, and until such application for insurance has been accepted there is no contract of insurance. If delivery was not essential to the completion of the contract in this case, the plea that such delivery was delayed by the negligence of appellant tendered an immaterial issue, and should have been stricken out on exception. If such delivery was essential, delay caused by the acts of appellant would not, in law, take the place of such delivery. "No delay, reasonable or unreasonable, will constitute a contract in the face of the stipulation that it shall not take effect until delivered." Nibleck on Benefit Societies, 142. "Delay will not be treated as an acceptance." Joyce on Ins., sec. 57. Delay will afford no presumption of acceptance. McLendon v. Woodmen of W., 64 S. W., 39, 52 L. R. A., 447. "If the applicant was dissatisfied and the delay unreasonable, he could have recovered the money which he had paid. . . . No negligence, no delay, reasonable or unreasonable, on the part of the insurance company, could make a contract in the face of the stipulation." Misselhorn v. Insurance Co., 30 Fed., 545. This issue is also raised by assignment of error on the charge of the court, wherein the jury are instructed that, if appellee is otherwise entitled to recover, to find for appellee, if the policy could have been delivered to Owens in his life-

time by the exercise of ordinary diligence on the part of appellant. We sustain this assignment of error.

3. The appellant insists that the court erred in charging the jury to find for appellee if the delivery of the benefit certificate was prevented by the delay of appellant, for the reason that if the transaction had been handled with the utmost dispatch the uncontradicted evidence showed that said certificate could not have been issued while appellee was in good health, and that his statements as to his being in good health were continuing warranties up to the time of the consummation of the contract. Under appropriate assignments appellant makes this same contention as to continuing warranties up to the time said certificate was actually issued, and also up to the time it was received by the clerk of the local camp, if such receipt could be treated as a delivery to the deceased. We think that these contentions are sound. If delay was a defense, it would devolve upon the party asserting such delay to prove it. The evidence shows that Owens made his application at Killeen, Texas; that the office where the certificate was issued was at Rock Island, Illinois. The distance and the mail facilities between these points is not shown. It appears that the application was made on September 25th; that it was returned for correction and received at the office of appellant on October 11th. In this no delay is shown on the part of appellant. It appears that it was examined and approved by the head physician on October 11th; that it was received by the head clerk on October 12th, and approved by the Supreme Medical Directors on the same day, all of which was required by the by-laws before the certificate was issued. The certificate was issued on the 15th. There is nothing to show that there was any delay in this. The undisputed evidence shows that Owens was sick on September 27th, and that on the 30th his disease was pronounced typhoid fever. Had there been the utmost dispatch, could the certificate, in the regular course of business, have been issued before September 30th? There is no evidence to show that it could. If not, was said sickness a breach of the warranty that Owens was in good health? In other words, were the statements of Owens as to the condition of his health continuing warranties up to the time of the consummation of the contract, or, if the evidence had raised that issue, up to the time it would have been consummated had the matter been handled with the utmost dispatch? We think so. "When the insured has stated in his application that he is in good health, and becomes sick before the contract of insurance is completed, it is his duty to disclose such fact to the company." Whitley v. Insurance Co., 71 N. C., 483-5. "The company was entitled to know of such changed condition as to health, so as to determine whether or not it would consummate the contract." Cobb v. Insurance Co., 28 Fed., 30. See also Thompson v. Insurance Co., 91 N. W., 77; May on Ins., sec. 190; Bacon on Benefit Societies, sec. 274.

4. The appellant requested the court to peremptorily instruct the jury to return a verdict for the defendant, and assigns error on the refusal of the court to give said charge. We think the court should have so instructed the jury for the reasons: (1) The application was expressly made a part of the certificate, and the answers therein, as

well as the conditions and limitations in the by-laws, were, in express terms, made warranties. The representations as to health were continuing warranties to the consummation of the contract. In no event could the contract be said to be consummated until said application was approved by the society. This was on October 12th. The undisputed evidence is that Owens was at this time mortally sick of typhoid fever, and died of said sickness on October 18th thereafter. The society had no knowledge of such sickness at the time it approved said application, nor at the time it issued said certificate, to wit, on October 15th. (2) The reception of said certificate by the clerk of the local camp on October 17th was not a delivery thereof to said Owens. The clerk was the agent of the society to deliver said certificate, but was not the agent of Owens to receive said certificate. The clerk was not only justified in not delivering the certificate to Owens immediately upon receiving the same, but he had no authority so to do. The by-laws of said society, as well as said application, expressly stipulate that it should be delivered to the insured while in good health. Said clerk was expressly prohibited by said by-laws from waiving any of the requirements thereof, of which Owens had notice at the time of his application, and of which he was required to take notice. Bacon on Benefit Societies, sec. 81; Niblack on Benefit Societies, sec. 18; Loyd v. Modern W. of A., 87 S. W., 530. Under such circumstances, had the clerk delivered said certificate to Owens, such delivery would not have been binding on the Society. Metropolitan L. Ins. Co v. Betz, 44 Texas Civ. App., 557, 99 S. W., 1140; Modern W. of A. v. Tevis, 117 Fed,. 369; Graves v. Modern W. of A., 89 N. W., 6. (3) The certificate was never delivered to Owens. A delivery of the certificate to the wife of Owens after his death was not a delivery to him. He never saw the certificate, and, presumably, did not know that it had been received by the clerk of the local camp. The application and the by-laws, both made a part of the certificate, each expressly provided that said certificate should not take effect until it was delivered to the applicant. McLendon v. Woodmen of W., 106 Tenn., 695, 64 S. W., 39, 52 L. R. A., 447; Roblee v. Association, 77 N. Y. Supp., 1099; Wilcox v. Woodmen of W., 76 Mo. App., 575. In Home Forum v. Varnado, 55 S. W., 364, it was held that a certificate delivered by a local agent, when the insured was sick, was binding on the order. We apprehend that the court would have held the certificate effective under the facts of that case, if there had been no delivery at all, as was held in the case of the same order (Home Forum) v. Jones, 20 Texas Civ. App., 68, 48 S. W., 221; but this was upon the ground that the contract was complete without the issuance of the certificate, which was doubtless correct under the by-laws of that order and the facts of those cases. But such is not the case here. On the contrary, the delivery of the certificate to the applicant while he is in good health is a condition precedent to the taking effect of same. It is true that a binding contract of insurance may be made by the making and the acceptance of a proposition, without the issuance of a policy, the policy not being the contract, but only the written statement thereof; but it is also true that "the competency of the parties to expressly stipulate when it (the insurance contract) shall become operative can not

be questioned." Misselhorn v. Insurance Co., 30 Mo. App., 600. "Although the company had accepted the insured and written the policy, still, there being a stipulation that it should not become effective until delivered, there being no delivery, the party having died, no recovery could be had." Kohen v. Reserve Fund, 28 Fed., 705.

On account of the importance of the questions involved in this case, and especially the importance of our disposition of the case to the appellee, we regret that we have not had the assistance of the able counsel who represented her in the trial court. No brief for the appellee has been filed in this court.

For the reason that it conclusively appears from the testimony herein that the appellee has no cause of action against the appellant, this case is reversed and judgment is here rendered for appellant.

*Reversed and rendered.*

ON MOTION FOR REHEARING.

In our opinion heretofore rendered in this case we passed upon a number of legal propositions raised by appellant's assignments of error, two of which we deem it proper to further discuss in the light of the authorities cited by able counsel for appellee in his motion for rehearing, to wit: The alleged waiver of the warranties, and the effect of the delay arising from the necessity of correcting errors in the application. We think the facts of the cases cited differentiate them from this case; but if not, we hold that, in so far as they differ from the principles announced in our opinion herein, if at all, they do not announce sound principles of law.

First, as to the facts of this case. Each and all of the answers in the application of the deceased Owens, and each of the conditions in the benefit certificate, were distinctly stated to be express warranties. One of these statements was that applicant was in good health, and did not have, among other diseases, typhoid fever. We held this answer to be true at the time it was made. It is not controverted by appellee that said statement was a continuing warranty, which would avoid the policy if it was broken before the contract of insurance was consummated, unless the same was waived by the company. The undisputed evidence shows that Owens was mortally sick of typhoid fever when his application was approved October 12th, and when the benefit certificate was issued on October 15, 1907; that he was in this condition when the certificate was received by the clerk of the local camp on October 17th, and that he died of said disease on October 18th, and that said certificate was never delivered to said Owens. The evidence also shows that the application was returned for correction as to some matters of family history five or six days after it was made. Appellee insists that Owens' application dates from the time of said corrections; that he was sick at said time, which fact was known to the local physician; that the knowledge of the local physician in this regard was the knowledge of the company, and that by thereafter approving his application and issuing his certificate it waived the conditions as to the health of Owens. This statement carries with it its own refutation, when an appeal is made to a sense of

fair dealing. Does the law require us to so hold? We concede that a principal is bound by the acts of his agent done within the scope of his authority, or, if within the apparent scope of his authority, the principal may be estopped in a proper case to deny such authority, and that such authority may be presumed by the acts of the principal in reference thereto; or that ratification of an unauthorized act may be shown by the acts of the principal, done with full knowledge of the facts. No ratification in this sense is involved in this case. Did the application date from the time such corrections were made? We think not, under the facts of this case. Did Owens have the typhoid fever when said corrections were made, and was such fact known to him and to the local physician? In view of the verdict in this case, and the testimony of appellee, this may be doubted in the sense intended by the parties. The original application was made on September 25th; it was returned in five or six days; Dr. Woods was called to see Owens on September 27th; Mrs. Owens testified that Dr. Woods at first thought her husband had a light attack of malaria, and that her husband took his bed in about a week after the first call. But if the answers in said application are to be treated as having been made as of the date of correction of said certificate, and Owens then had typhoid fever, as both he and the local physician well knew, and he answered that he was not sick, and the physician certified that his answers were true and approved the application, such act was a fraud upon the company in which the applicant knowingly participated, and would not have been within the scope of such physician's authority, either actual or apparent. There is nothing in the cases of Mutual Life Ins. Co. v. Blodgett, 8 Texas Civ. App., 45, 27 S. W., 286, nor in Gulligan v. Insurance Co., 71 Ark., 295, 73 S. W., 103, when read in the light of the facts of these cases, which contravenes the doctrine here announced.

In this case it was especially provided, as a prerequisite to the taking effect of the certificate, that it should be delivered while the applicant was in good health. In Pledger v. Woodmen of W., 17 Texas Civ. App., 18, 42 S. W., 653, the court held that the by-laws did not require actual delivery, as a condition precedent to recovery, and there is nothing in the opinion to indicate that the party was required to be in good health at the time of such delivery, and the court held that the clerk, having no authority to refuse delivery, equity will treat that as having been done which should have been done. In the case at bar the clerk was both authorized and required to refuse to make such delivery. In the case of Woodmen of W. v. Carrington, 41 Texas Civ. App., 29, 90 S. W., 922, it was shown that the clerk was authorized to either deliver or withhold the certificate, in his discretion, and that he delivered the same and received the dues thereon, knowing that the party was sick at the time. It does not appear from the conclusions of fact in said case that either actual delivery or good health at such time was a prerequisite to the taking effect of the certificate, and therefore what the court said on that subject was dicta. However, the court in that case was correct in holding that such conditions were immaterial, if the clerk had the authority, as the evidence shows that he did, to waive these conditions, and he did so, and delivered the

certificate. In Northwestern L. Ass'n v. Findley, 29 Texas Civ. App., 494, 68 S. W., 698, it was held that, where on the trial of the case the association does not disclose the power of the agent, and the certificate was delivered during what appeared to be a temporary sickness of the insured, it will be presumed that the agent had authority to waive the requirement that the certificate should be delivered while the insured was in good health. In Washington L. Ins. Co. v. Berwald, 72 S. W., 436, it was held that if an insurance company clothes an agent with power to waive the payment of the premium, and he does so, this will be binding on the company, notwithstanding the fact that the policy provides that such power shall be exercised only by certain named officers of the company. This is a sound proposition of law. To actually invest an agent with authority to do a thing, and then to deny his authority, is juggling with words. Knights of P. v. Withers, 177 U. S., 260, 44 Law Ed., 765. On the other hand, a member of a fraternal insurance organization is presumed to know its by-laws. Bacon on Benefit Societies, sec. 81; Nibleck on Benefit Societies, sec. 18. Everyone, in the absence of fraud, misrepresentation or concealment, is conclusively presumed to know the terms of his policy, and to have assented thereto. Morrison v. Insurance Co., 69 Texas, 353, 6 S. W., 606. Where, as in this case, the by-laws expressly provide that the local officers shall not have authority to waive any of the conditions of the policy, there ought to be some proof of such authority, more than the bare fact of the violation of such rules with the connivance of the assured without the knowledge of the company. This would have been the only ground for assuming that the clerk had authority to deliver said certificate, had he delivered the same when he received it, the day before the death of Owens. But he did not deliver the certificate to Owens, and this, we think, is a complete defense to appellee's suit.

The appellee contends that the certificate would have been received ready for delivery while Owens was in good health, but for the delay which occurred in correcting said certificate. We see no reason for changing our opinion on this point. If Woodmen of W. v. Dees, 45 Texas Civ. App., 318, 100 S. W., 366, can be construed to hold to the contrary, it is against the authorities. Said decision can be upheld upon the proposition that mailing the certificate by the Sovereign Camp was, in law, a delivery of the same, and that, if it had been received by the clerk of the local camp, the delivery of the same by him would have been a mere ministerial act, which he would have had no authority to refuse to perform; and therefore, as was said in Home Forum v. Varnado, 55 S. W., 367, "it could not be held that the certificate was not delivered." See also Woodmen of W. v. Pledger, supra.

Believing our opinion as heretofore delivered in this case to be correct, we overrule the motion for a rehearing.

*Motion overruled.*