FLETCHER v. SUPREME LODGE
KNIGHTS AND LADIES
OF HONOR.

(Court of Civil Appeals of Texas. Feb. 18, 1911.)

1. INSURANCE (§ 750*)—MUTUAL BENEFIT SOCIETIES—FORFEITURE—NONPAYMENT OF ASSESSMENTS.

Where the constitution and laws of a mutual benefit society provided that nonpayment of a monthly assessment before the first day of the succeeding month should forfeit the certificate without action by the association, and at the time deceased was taken sick he was in default and had been returned by the local secretary as delinquent, and no effort was made to pay such delinquent assessments prior to his death, the certificate was forfeited.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1895; Dec. Dig. § 750.*]

2. INSURANCE (§ 754*)—MUTUAL BENEFIT ASSOCIATION—NONPAYMENT OF ASSESSMENTS—SECRETARY—DUTY.

Where the rules of a mutual benefit society did not require its secretary to go to the homes of members to collect assessments, his previous custom, of which the Supreme Lodge had no notice, in so doing was a mere courtesy, on which no rights could be based.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 754.*]

Appeal from Henderson County Court; John S. Prince, Judge.

Action by Lillie R. Fletcher against the Supreme Lodge Knights and Ladies of Honor. Judgment for defendant, and plaintiff appeals. Affirmed.

Miller & Royall and W. R. Bishop, for appellant. Locke & Locke, for appellee.

RAINEY, C. J. This is a suit by appellant to recover of the appellee one-third the amount of a benefit certificate issued in favor of her husband, H. C. Fletcher.

On May 31, 1909, H. C. Fletcher became a member of the order of Knights and Ladies of Honor; he having up to that time complied with all the conditions requisite to that end. His wife, the appellant, was named as his beneficiary in the certificate to which he was entitled. Said certificate was for $1,000 and contained a provision that in case of his death within 12 months, the beneficiary would be entitled to one-third of said amount.

The application for membership made by H. C. Fletcher contained the following provisions: "I further agree, if accepted as a member of the order, to faithfully abide by all provisions of the constitution and laws of the order now in force or that may be hereafter enacted for the government of the order, and which are made a part of this application. I further agree that the relief fund certificate hereinafter issued to me shall have no binding force whatever unless I contribute my share and proportion to the relief fund when due, in accordance with the constitution and laws of the order; and if I fail to pay all assessments and charges due from me by the last day of each month, I shall stand suspended from the order as provided by its laws, without any notice, and neither myself nor my beneficiary or beneficiaries shall thereafter be entitled to any rights and benefits of the order until I am duly re-instated, as provided by the laws of the order, and I sign this application with full knowledge of the above restrictions and conditions."

The benefit certificate contained the following: "This relief fund certificate shall have no force whatever unless the member shall strictly comply with the constitution and laws of the order now in force or that may hereafter be enacted, and which are made a part of this certificate." On the back of said certificate was indorsed: "First. One assessment must be paid each month by every relief fund member without notice. Second. Assessments are made on the first of each month, and members failing to pay

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

the same on or before the expiration of the last day of the month stand suspended from the order without notice." "Fourth. While under suspension a member's relief fund certificate is void, and in case of his or her death while under suspension the beneficiary will not be entitled to the benefits of the order."

And the constitution and laws of the order provide:

"Sec. 4. Applicants for relief fund membership, after approval by the Supreme Medical Examiner, and upon presenting themselves to receive the degree, shall pay to the financial secretary, on account of the relief fund, the initial assessment provided for in the following table, according to the age of said applicant at nearest birthday at date of admission, and the same amount on each assessment thereafter. * * * All applicants for relief fund membership shall be liable for the assessment levied for the month during which they are initiated.

"Sec. 5. Subordinate lodges may at their option, notify members of assessments. But neither the giving of nor the failure to give such notice shall affect the liability of the member to pay the assessments fixed by law as herein provided. Each month every member of the relief fund shall pay the amount of his or her assessment according to the table of rates in section 4 of this law. All members are required to take notice that assessments are due and payable on the first day of each month, and any member failing to pay such assessments before the close of the last day of each month shall stand suspended from the order, and shall not thereafter be entitled to the benefits of the order until duly re-instated in accordance with the laws of the order."

"Sec. 13. The amount of the assessment due each month from each member being fixed by the table of rates, the publication and promulgation of the same in this code of laws shall be deemed sufficient notice to all members of the relief fund and it shall be their duty to ascertain the amount due and pay the same to the financial secretary."

The rights of membership and participation in the relief fund commence upon the initiation of the applicant, which was, in the case of H. C. Fletcher, May 31, 1909. During the month of June, 1909, an assessment was regularly made and became due and payable by said Fletcher on June 30, 1909, which was never paid or payment tendered by said Fletcher, nor by any one for him. The financial secretary of the local lodge had to make his report on July 5th to the Supreme Lodge, and if the assessments were paid by that time he would report them paid, and such members as had paid up to the sending off of his report were reported as in good standing. His duty was to suspend all members who had not paid by the first of the month. The secretary as a

matter of accommodation usually called on the members who had not paid and were delinquent before making his report on the 5th of the month, but he was under no duty to pursue this course, and the Supreme Lodge had no notice of such conduct on his part. On July 3, 1909, Fletcher was in the grocery store of the secretary and inquired for his certificate. The secretary went to his desk and looked for it, but not finding it told him that if it had not come he would procure another. He then stated to Fletcher that the June assessment was past due and if not paid before Monday, July 5th, the day he had to make his report and remittance to the Supreme Lodge, he (Fletcher) would be suspended. Fletcher then agreed to meet him at church next day and pay him the money. The secretary was at church on Sunday, but Fletcher was not there, and the money not paid. On Monday, July 5, 1909, the secretary forwarded his report and remittance to the Supreme Lodge and Fletcher reported as suspended. In the afternoon of July 5th the secretary called at the pottery to see Fletcher, but did not find him; one of the witnesses testifying that Fletcher left the pottery at noon; had gone home sick. From that time until his death, July 16, 1909, Fletcher remained at his home and was never down town. There is substantially no conflict in the testimony, which shows that Fletcher was due an assessment for the month of June and, by the terms of his contract, had to be paid before the end of that month, or he would stand suspended. He did not pay or tender it. He had the opportunity to pay on or before the 5th day of July, of which opportunity he failed to avail himself. Such being the evidence, we fail to see any ground, either in law or equity, upon which appellant can base a recovery.

Appellant's counsel argue that the secretary "was a paid officer, and it was his duty to go to the home of the members and make each collection." We think this contention is not borne out by the facts, as shown by the record. The rules of the order prescribe no such duty, and if the secretary assumed the duty of going to members' homes to make collections it was a mere courtesy on his part, of which the Supreme Lodge had no notice and was not bound thereby. The cases of World v. Dees, 45 Tex. Civ. App. 318, 100 S. W. 366, and Pledger v. Sovereign Camp W. of W., 17 Tex. Civ. App. 18, 42 S. W. 653, are cited in support of appellee's position. The facts of said cases differ from the one at bar, in that liability for assessments did not accrue until the certificates were delivered to the members, which had not been done in those cases. In the instant case the rights and liabilities of the parties do not depend upon the issuance and delivery of the certificate.

The judgment is affirmed.