**GILMORE v. GRAND TEMPLE & TABERNACLE IN STATE OF TEXAS OF KNIGHTS AND DAUGHTERS OF TABOR OF INTERNATIONAL ORDER OF TWELVE. (No. 2265.)**

(Court of Civil Appeals of Texas. Texarkana. May 27, 1920.)

1. Insurance ⊝747—Beneficiary in certificate of suspended member not entitled in view of by-laws.

Where mutual benefit certificate stipulated society should not be liable unless insured when he died was in good standing with his tabernacle, endowment department, and grand temple and tabernacle, certificate accordingly was not binding on society when member died, not in good standing, but suspended for failure to pay endowment tax on certificate for a quarter.

2. Insurance ⊝761—Requirement of by-laws as to good health prevented reinstatement on payment of delinquent endowment tax.

Where by-laws of benefit society expressly provided that, if insured was not in good health when payment of a delinquent quarterly endowment tax on his certificate was made, payment should not operate to reinstate him, provision must be given effect, such facts existing, as barring the beneficiary.

Appeal from District Court, Harris County; Henry J. Dannenbaum, Judge.

Suit by Hattie Gilmore against the Grand Temple and Tabernacle in the State of Texas of the Knights and Daughters of Tabor of the International Order of Twelve. From judgment for defendant, plaintiff appeals. Affirmed.

---

⊝For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

December 12, 1911, appellee a fraternal benefit society issued a certificate whereby it bound itself to pay $1,000 to appellant, the beneficiary named therein, when her husband, James I. Gilmore the insured, died, if he was then "in good standing with his tabernacle, the endowment department, and the grand temple and tabernacle." At the time he died, to wit, June 26, 1916, Gilmore was appellee's grand auditor. This suit was by appellant as the beneficiary named in the certificate to recover the amount thereof, and by her as the sole heir of said Gilmore to recover the value of services she claimed he had performed for appellees as its grand auditor. After the parties had presented the testimony they respectively relied on, the court instructed the jury to return a verdict in appellee's favor. The appeal is from a judgment in conformity to such a verdict.

M. H. Broyles, of Houston, for appellant.
Fred R. Switzer, of Houston, for appellee.

WILLSON, C. J. (after stating the facts as above). Appellant insists there was testimony which warranted a finding that appellee was liable to her on the certificate she sued on, and that the trial court therefore erred when he instructed the jury to find in appellee's favor.

From the testimony it appeared that the certificate and the laws of the society as they were when it was issued, and as they might be in the future as the result of amendments and additions thereto, constituted the contract between the parties, and it was provided in said laws that—

"No subordinate temple or tabernacle, nor any subordinate officer or member, shall have the power or authority to waive any provisions of the laws or constitution of this order or of the Taborian endowment benefit."

By the terms of the certificate appellee was not to be liable to appellant as the beneficiary named therein unless the insured when he died was "in good standing with his tabernacle, the endowment department, and the grand temple and tabernacle."

By its laws as they existed prior to July, 1910, the society could issue certificates for only $300 each. The insured as a member of the society then held a certificate for that amount. The "endowment tax" on such a certificate was $1 per quarter.

At the time stated the laws of the society were so changed as to authorize the issuance of certificates for $1,000 also, and as to authorize then existing members who wished to do so to exchange the $300 certificates they held for $1,000 certificates. The endowment tax on certificates for $300 continued to be $1 per quarter. The endowment tax on certificates $1,000 was fixed at $3 per quarter, and a member who wished his $300 certificate changed to one for $1,000 was required to "pay," quoting, "twelve calendar months $3

a quarter from the date that his policy is changed before the $1,000 policy becomes effective or in full force."

It appeared without dispute in the testimony that the insured did not comply with the requirement that he pay $3 per quarter during said 12 months, but that he instead paid only $1 per quarter during that time. By amendments of the laws of the society made in 1914 the endowment tax on certificates for $300 was increased to $1.35 per quarter and on $1,000 certificates to $4.50 per quarter. Thereafter the insured, who theretofore had paid an endowment tax of only $1, began to pay $1.35, and never afterward paid more than that sum as such a tax.

The insured never having paid the endowment tax he should have paid on a certificate for $1,000, but having always instead paid the tax he should have paid on a certificate for $300, the society at his death treated the certificate issued to him as one for $300, and paid to appellant that sum, less a tax of $10, chargeable against it by a law of the society.

In the amendments referred to it was provided that the endowment quarters should begin with the 1st days in December, March, June, and September, and that the failure of a member to pay the endowment tax "on or before the first day of the first month of the endowment quarter * * * ipso facto suspends such member and his or her beneficiary from the right to participate in the endowment fund, until the said endowment tax and other dues and assessments and taxes have been paid and the said endowment tax has reached the office of the chief grand scribe." And further that—

"Any member suspended for nonpayment of endowment tax may be reinstated upon the payment within 60 days from the date of the suspension of all arrearages of every kind, including the current endowment tax; provided, however, that he be in good health at the time of the reinstatement. Whenever any endowment tax is tendered by a member or any one else for him for the purpose of reinstatement such tender shall be in effect a warranty by such member that he is in good health, and when paid by the member or any one on the member's behalf after such member's suspension the same shall be received and retained without waiving any of the provisions of this section; provided further, that the receipt and retention of such payments in case the suspended member is not in good health shall not have the effect of reinstating said member or entitling such member or his beneficiaries to any right under his endowment certificate."

It appeared without dispute in the testimony that the endowment tax due from the insured for the quarter beginning June 1, 1916, was not paid to the lodge of which he was a member until the 22d day of that month, that he was then suffering from paralysis, and that he died three or four days thereafter. When the tax reached the office of the

chief grand scribe does not appear from anything we have found in the record.

[1] Conceding, but not deciding, that the certificate was effective notwithstanding the provision in the by-laws which declared it should not be if the insured failed, as he did, to pay an endowment tax of $3 a quarter during the twelve months following its date, it is plain it nevertheless was not valid and binding on appellee at the time the insured died, because he was not then in good standing in the society, as it was stipulated in the certificate he must be, but instead stood suspended because of his failure to pay the endowment tax on or before the first day of the quarter beginning June 1, 1916. The provision of the by-laws applicable was that such failure should ipso facto suspend a member and the right of his beneficiary to participate in the endowment fund until the tax and all other dues and assessments had been paid and the "endowment tax had reached the office of the chief grand scribe."

[2] Even if it appeared, and it does not, that the endowment tax paid to the local lodge June 22, 1916, reached the chief grand scribe's office before the death of the insured, it could not be held that the insured was thereby reinstated, for it appeared that he was then fatally sick, and it was expressly provided in the by-laws that if the insured was not in good health at the time payment was made it should not operate to reinstate him. 3 Vernon's Statutes, arts. 4830, 4834, 4847; Grayson v. Grand Temple, etc., 171 S. W. 489; 3 Joyce on Insurance, §§ 1261, 1261a; Fletcher v. Knights and Ladies of Honor, 135 S. W. 201; Day v. Woodmen Circle, 174 Mo. App. 260, 156 S. W. 721.

Appellant urges as another reason why the trial court should not have instructed the jury as he did that there was testimony which would have warranted a finding that appellee was liable to her for the value of the services the insured rendered it as its auditor during his lifetime. She does not set out such testimony in her brief, nor cite us to it in the record. In reading the testimony sent to this court, we did not find any which we think would have supported such a finding.

The judgment is affirmed.

---

⬦⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes