The appellant's propositions in effect present the points in view: (1) That the insured was not reinstated as a matter of right under his lapsed certificate, because at the time he was sick with a disease from which he subsequently died; and (2) the order did not waive compliance with the requirement of good health of the insured, and is not estopped from insisting that the insured was not a member in good standing at the time of his death.
It is believed that the appellant's contention should be sustained. The laws of the order, quoted above, together with the benefit certificate, constitute the contract between the parties. The laws provide that if the insured member shall fail to pay his monthly installment of assessment and camp dues "on or before the last day of the month" for which the same are due and payable, "he shall stand suspended, and during such suspension his beneficiary certificate shall be void." The provision is plain and direct, and thereunder the mere failure of the insured member to pay, as admittedly happened in the present case, his monthly assessment and dues at the appointed time, ipso facto works a forfeiture of his membership and an abrogation of the contract between the parties. That is the clear legal effect immediately upon the contingency happening, and the delinquent has not any longer a claim against the order, unless thereafter reinstated in the order in accordance with the terms and requirements of its laws in that respect. And viewed in the light most favorable to the appellee, there is no room in the evidence upon which to predicate a ruling that the insured member was reinstated, as a matter of right or contract, in the order prior to his death, or at all. The insured member did not meet, and was wholly disabled from meeting, the terms of the laws of the order authorizing and permitting reinstatement so far as relates to "good health." The laws of the order expressly provide that an insured member who shall have forfeited his benefit certificate by a default in the payment of dues and assessment at the appointed time may be reinstated and his benefit certificate revived within the designated period of not exceeding three months after the default, only upon the following conditions in fact existing, viz.: (1) "Pay all arrearages and dues to the clerk of his camp," and (2) "be in good health" and not "impaired health" at the time of the application and for "30 days after any attempted reinstatement." Payment of arrearages and dues is not sufficient to accomplish the reinstatement unless the member actually be in good health at the time and continued in good health for 30 days thereafter. The law expressly provides:
"No suspended member shall be reinstated whose health is at the time impaired, or becomes impaired within thirty days after any attempted reinstatement," etc. * * * "Any attempted reinstatement shall not be effective for that purpose unless the member be in fact in good health at the time, and continue in good health for thirty days thereafter," etc.
Mr. Bailey, as admitted, "was first taken sick with the illness which caused his death, on June 10, 1922, that he received medical attendance on said date, and that he died of said illness on June 18, 1922"; hence, as affirmatively proven, Mr. Bailey was, in virtue of his serious sickness, within the particular description of delinquent members expressly barred from the right of reinstatement and revival of the benefit certificate. Gilmore v. Grand Temple and Tabernacle (Tex.Civ.App.) 222 S.W. 294. He was under "suspension," in virtue of the default in payment of dues and assessment, at the time of his death on June 18th.
The controversy, then, must be determined upon the last contention of appellee, which is that the appellant order waived the forfeiture of the certificate and cannot now be heard to say that Mr. Bailey was not a member in good standing at the time of his death. The contention is based upon: (1) The order's having received the arrearages for May on June 12, 1922, and retained the same until June 21, 1922; and (2) upon the acts and conduct of the clerk of the local camp at Forth Worth and the Sovereign officers.
But we believe that the doctrine of waiver or of estoppel cannot be made applicable to the instant case. At the time Mr. Bailey mailed the money order for his May arrearages, he did not notify the clerk of the local camp that he was sick and the local clerk, as admitted, "had no knowledge whatever of the condition of the health of the said Bailey." Nor did the officers of the Sovereign camp know of Mr. Bailey's condition until July 12, 1922, when they received the proofs of his death. On July 21st, nine days after receiving the proofs of death, the Sovereign officers returned the arrearages, refusing to accept same on the ground of Mr. Bailey's suspension. The time was reasonable, in view of the usual course of business of the order, and not an unreasonable delay of refusal. Not being in a position to know the facts concerning Mr. Bailey's sickness, there could not reasonably be imputed to the officers intentional relinquishment of the requirement of good health. In order to predicate a waiver of the requirement of good health, the officers must have known of his condition, and with this knowledge have nevertheless kept and retained the arrearages paid in; for one cannot be said to have waived that which he does not know. A waiver exists only where one with full knowledge of material facts does or forbears to do something inconsistent with the existence of the right or of his intention to rely upon that right. 40 Cyc. p. 259, § 3. In other words, to warrant the *Page 786 
holding of waiver there must appear from the evidence that it was manifested in some unequivocal manner, and intentional, after knowledge of the fact. Mere knowledge that the arrearages were proffered for reinstatement would not be sufficient, since mere payment of arrearages was not all that was required in this case, in view of the laws of the order, which the insured would be bound to know. A further condition and essential prerequisite for reinstatement was that of "good health" at the time and continuing for "30 days thereafter." And there is no pretense that compliance with this condition was waived by any declaration, act, or conduct of its officers, or even by nonaction on their part from which an intention to waive may be reasonably inferred. Neither can estoppel be founded on the facts. The very essence of this doctrine is that the party relying upon the estoppel was misled to his prejudice by reason of the affirmative acts or conduct or representation of the other party, or by reason of the silence of the other party when in equity and good conscience he ought to have spoken. The acceptance of the arrearages for May by the clerk of the local camp, with no knowledge on the part of the clerk or the superior officers of the order that Mr. Bailey was ill and not in good health, did not constitute a false representation; nor was it an act inconsistent with the requirement of the order that a delinquent member must be in good health and must remain in good health for 30 days thereafter in order "to stand reinstated." The clerk did no more than receive the proffered money; he made no representations and did no act inconsistent with the present contention of the order that the insured was not in good health — a necessary condition for effective reinstatement. Although the clerk did not write in the receipt that it was agreement upon the condition of "good health," the law of the order did so, as Mr. Bailey would be held to know. It is true that the clerk might have demanded of Mr. Bailey a written warranty of good health, but this irregularity or failure to do so could not reasonably be construed as a waiver of the express requirement itself of "good health in fact," which is so explicitly set out in the fundamental laws of the order, which Mr. Bailey knew and which the clerk had no authority to waive.
The insured was bound to a knowledge of the fundamental laws of the order in respect to the right of reinstatement. Bennett v. Woodmen of the World (Tex.Civ.App.) 168 S.W. 1023; Splawn v. Chew, 60 Tex. 532; United Moderns v. Colligan, 34 Tex. Civ. App. 173, 77 S.W. 1032; and other cases. And the clerk of the local camp had no authority to waive the requirement of good health for reinstatement, or to waive any provision of the constitution and by-laws of the order. Section 82 of the constitution of the order, quoted above, so provides. Article 4846 of the statutes of this state expressly authorizes a fraternal benefit society, as is appellant, to so provide in its laws. The article of the statute reads:
"The constitution and laws of the society may provide that no subordinate body nor any of its subordinate officers or members shall have the power or authority to waive any provision of the laws and constitution of the society, and the same shall be binding on the society and each and every member thereof and on all beneficiaries of members."
The local clerk, not otherwise knowing, had the right to assume that Mr. Bailey, knowing the condition for effective reinstatement, would not reasonably have attempted it unless he were in fact in good health. The failure even of the clerk to demand a written statement of health occasioned no injury to nor did it mislead Mr. Bailey. Mr. Bailey was unable, as he knew, to give such statement, since he was not in good health. The right was lost to him and he was barred of reinstatement in virtue alone of his condition of health. Circumstances must appear other than the mere receiving of dues in order to found estoppel in this case. The mailing of delinquent dues and assessment to the local clerk, and his receiving same, standing as a fact by itself, as it does, amounts to no more than an effort at reinstatement on Mr. Bailey's part which failed of its purpose on account of his illness at the time and of his death eight days thereafter.
There is no significance attaching to the fact that Mr. Bailey had at numerous times paid and the clerk received his delinquent dues. All of these payments were made within the period of time authorized by the laws of the order, as an absolute right of Mr. Bailey, and there is no pretense of any evidence that Mr. Bailey at any of the times was not in good health. No ill health was involved in any of the instances.
There is quite a distinguishment between this case and the cases cited, in view of the facts.
The judgment is reversed, and judgment is here entered in favor of appellant; the appellee to pay costs of the trial court and of this court.
 On Motion for Rehearing.
It is believed that this case is different from, and not in conflict with, the cases of Maccabees v. Johnson (Tex.Civ.App.) 273 S.W. 612, and Sovereign Camp Woodmen of the World v. Hines (Tex.Civ.App.) 273 S.W. 927. In the Johnson Case as reported the question rested solely upon accepting dues paid by the insured after the prescribed time. The secretary of the local lodge "knew that Johnson (the insured) had been hurt" (and which injury resulted in his death) at the time he received and accepted the delinquent assessments from the insured. There was no *Page 787 
by-law requirement that the insured remain "in good health for 30 days" after the delinquent dues are paid. As held, the local secretary was the agent of the society, and there was waiver of prompt payment of assessments, precluding the society from setting up forfeiture of policy. In the Hines Case the local clerk received the delinquent assessments "and marked the receipt `reinstated' and also entered the name of the deceased on his books as reinstated at the time, and that it was the intention of the local clerk to reinstate the insured." It also appeared "that deceased was sick at the time he tendered his dues on March 8, which was known to the local clerk at the time, and was also known to the local camp physician, Dr. L. Corley." As held, there was express waiver of the good health requirement, precluding the Sovereign Camp from asserting forfeiture. As stated:
"It was not, however, shown that there was any fraud or concealment on the part of the insured by which the clerk of the local camp was induced to accept said payment and to attempt to reinstate him. The clerk seems to have acted in good faith, relying on the fact that the Sovereign Camp had acquiesced in the custom theretofore in vogue with reference to reinstating members of said local camp without requiring evidence of good health at the time."
In the instant case, however, there was no "reinstatement" by the local clerk, and there was no "custom" of reinstating members without requirement of good health, and "the local clerk had no knowledge whatever of the condition of the health of the said Bailey." Mr. Bailey never informed the local clerk of his sickness. Further, there is no proof that in any instance the good health requirement was waived as to delinquent members. Therefore, under the facts as before decided, there is no waiver of the good health requirement, nor estoppel precluding the setting up of forfeiture of the policy.
The motion is denied.