## BROWNWOOD BENEV. ASS'N v. MANESS.
### No. 716.

Court of Civil Appeals of Texas. Eastland.
June 20, 1930.

Rehearing Denied Sept. 19, 1930.

McGaugh & Darroch, of Brownwood, for appellant.

Owen & Owen, of Eastland, for appellee.

HICKMAN, C. J.

The appeal is from a judgment in favor of appellee against appellant for $1,000, besides interest, on a certificate of insurance issued by appellant to Allen W. Maness, Sr., in which appellee was named as beneficiary. No jury was demanded. The record comes to us with a statement of facts and also findings of fact and conclusions of law. These findings are attacked by various assignments and propositions. The controlling question presented to this court is whether judgment should have been rendered for appellant on the undisputed facts.

M. L. Elliott was agent for appellant in Eastland county. He did not have authority to issue certificates of insurance, but did have authority to solicit and procure applications and collect premiums and membership fees. On the 6th day of August, 1928, the assured, Allen W. Maness, Sr., upon the solicitation of Elliott, signed an application for a certificate of insurance on his life. The membership fee and premium which should have accompanied said application were not paid at the time the application was signed and delivered to Elliott, but were later sent by the assured to Elliott. On the 21st day of August, 1928, the appellant received this application, together with the initial payment thereon, through the mail at its office in Brownwood, Tex. The agent Elliott neglected to sign his name as agent to the application, and, for that reason, the appellant did not know from whom the application came. It was a rule of the association that all applications should be executed by the applicant and also signed by the agent taking same. No physical examination by a physician was required of an applicant, and one of the purposes of having the agent sign the application was to assure the association that the agent considered the applicant an insurable risk. The envelope inclosing the application disclosed that it was sent from a certain post office box in Gorman. The application not being satisfactory, because not signed by an agent, and not knowing who sent same, the appellant, upon receipt thereof, mailed it to the post office box number disclosed on the envelope. Elliott never received this returned application, and same has been lost. Thereafter, and on or about the 23d day of September, 1928, the assured complained to Elliott that he had not received his certificate of insurance, and Elliott, on that day, wrote to the defendant, inquiring about the application. Thereafter, and on or about the 1st day of October, 1928, Elliott visited the office of appellant at Brownwood and there discussed with W. H. Daniels, appellant's secretary and managing officer, the reason why no certificate had been issued to the assured. Elliott, a witness for appellee, gave the following testimony concerning this visit to the office of appellant: "I went to see the Brownwood Benevolent Association about the first of October, and they said that I had failed to sign the first application; Mr. Daniels told me that he would send Mr. Maness another application and when he sent it in, if it was all right, he would issue the policy; he said the reason the application was sent back was because my name wasn't signed to it; he said he received the premium; that is all I know about it." In this same conversation Elliott informed appellant that he considered the assured to be in good health and an insurable risk.

On October 3, 1928, Daniels mailed direct to the assured another application. Accompanying same was a letter of that date, signed by appellant, by W. H. Daniels, secretary, addressed to the assured, informing him that the application written by Elliott for him had been lost, and that, if he would fill in the application inclosed with the letter and send it to appellant, it would issue to him a policy. The record is silent as to when this letter and the second application were received by the assured, but he lived within fifty miles of Brownwood, where same was mailed.

On the 26th day of October the assured was stricken with a severe case of influenza. On the following day, October 27th, he caused the blanks in the second application to be filled in, and he himself signed his name thereto and caused same to be mailed to appellant's office in Brownwood. Before the application reached the office of appellant the assured died, his death occurring about 3 p. m. on October 28th. Appellant was not advised of the fact of the assured's death or of his sickness, and issued the certificate on October 30th. The suit is upon this certificate.

The application contained, among others, the following representations or warranties:

"I am in good health and free from all diseases. I live within fifty miles of Brownwood, Texas, and I warrant and declare that the answers to the above questions are true and correct and hereby agree that any material mis-statement shall render void any certificate based thereon. * * *

"In no case shall any liability rest with said Association unless the policy of insurance is issued and delivered to, and signed by me, during my lifetime and good health. * * *"

The initial payment of $5 was not returned to the applicant during his lifetime, but was tendered to appellee upon the trial of the cause. This money was retained by appellant pending the receipt of a proper application and until it was determined whether a certificate should be issued to the applicant.

■■ The controlling question presented is whether a contract was ever consummated between appellant and the assured. If the petition should be construed to allege an oral contract to issue a certificate, appellee was not entitled to recover thereon, for it is undisputed that Elliott had no authority to consummate a contract of insurance. Daniels alone had the authority to bind appellant, which could be done only by the acceptance of an application. An application for insurance does not become a contract unless and until it is accepted by the insurer. This is elementary. There is no contract without an offer and an acceptance. In the instant case the application signed by the assured contained the stipulation, above copied, that no liability should rest with the association unless the policy of insurance is issued and delivered to, and signed by, the assured during his lifetime, and while in good health. It is undisputed that the application upon which the policy was issued was signed by the applicant

while on his deathbed and but one day before he died, and that the certificate was issued after his death. Under these facts no contract of insurance was ever consummated. Modern Woodmen of America v. Owens, 60 Tex. Civ. App. 398, 130 S. W. 858, 861; Business Men's Accident Ass'n v. Webb (Tex. Civ. App.) 163 S. W. 380; Wright v. Federal Life Ins. Co. (Tex. Com. App.) 248 S. W. 325; Missouri State Life Ins. Co. v. Boles (Tex. Civ. App.) 288 S. W. 271; Southern Surety Co. v. Benton (Tex. Com. App.) 280 S. W. 551; American National Ins. Co. v. Crystal (Tex. Civ. App.) 272 S. W. 262; Ofield v. Ins. Co. (Tex. Civ. App.) 293 S. W. 271; Guarantee Fund Life Ass'n v. Barclay (Tex. Civ. App.) 11 S. W.(2d) 231; Victory Life Ins. Co. v. Ferrell (Tex. Civ. App.) 24 S.W.(2d) 774.

It is immaterial that Elliott, the agent of appellant, may have been negligent in failing to indorse the application, and that the reason no contract was consummated was on account of the negligence of such agent. This exact question is discussed in Modern Woodmen of America v. Owens, supra, from which we quote: "Appellant also specially excepted to the allegation in appellee's supplemental petition that, if said application had been handled without delay on the part of appellant, the benefit certificate could have been issued and delivered to said Owens prior to his death. This exception should have been sustained. An insurance company may determine for itself whether or not it will accept an application for insurance, and, until such application for insurance has been accepted, there is no contract of insurance. If delivery was not essential to the completion of the contract in this case, the plea that such delivery was delayed by the negligence of appellant tendered an immaterial issue, and should have been stricken out on exception. If such delivery was essential, delay caused by the acts of appellant would not in law take the place of such delivery. · 'No delay, reasonable or unreasonable, will constitute a contract in the face of the stipulation that it shall not take effect until delivered.' Niblack on Benefit Societies, 142. 'Delay will not be treated as an acceptance.' Joyce on Ins. § 57. Delay will afford no presumption of acceptance. McLendon v. W. of W., 106 Tenn. 695, 64 S. W. 39, 52 L. R. A. 447. 'If the applicant was dis-

satisfied and the delay unreasonable, he could have recovered the money which he had paid. * * * No negligence, no delay, reasonable or unreasonable, on the part of the insurance company, could make a contract, in the face of the stipulation.' Misselhorn v. Ins. Co. (C. C.) 30 F. 545."

The latest expression of this rule which we have observed is in Victory Life Ins. Co. v. Ferrell, supra, wherein this language is used: "A proposition or application becomes binding only when the insurer accepts the risk of the insurance applied for, and the acceptance must be actual, evidence by some act of the insurer, and from which it cannot recede without liability. Joyce on Ins. § 55. Delay in acting on the application will not in itself raise a presumption of acceptance. Joyce on Ins., § 57."

Appellee relies on Sovereign Camp, W. O. W., v. Dees, 45 Tex. Civ. App. 318, 100 S. W. 366, Sovereign Camp W. O. W. v. Hubbard (Tex. Civ. App.) 248 S. W. 732, and Perez v. Ft. Worth Mutual Benev. Ass'n (Tex. Civ. App.) 291 S. W. 574.

The Dees Case has been criticized, but, conceding that it and the other cases cited were correctly decided, they are not controlling. There is one fact in each of them which makes them distinguishable. That fact is that in each of these cases the contract had been consummated by the issuance of the policy, and the negligence arose in the failure to deliver the policy to the assured after the same was issued by the company. In the instant case, had the certificate actually been issued during the lifetime and good health of the assured, and had been delivered to Elliott, but, through his negligence, he had failed to deliver it to the assured, we would have a case similar to those last above cited. But, as noted, in this case no contract was consummated by the issuance of the certificate until after the death of the assured.

We believe that judgment should have been entered by the lower court denying appellee any recovery. The case has been fully developed. There is no disputed issue of fact. It is therefore our order that the judgment of the trial court be reversed and here rendered for appellant.