Winona E. ROBERTS, Appellant,

v.

CALIFORNIA–WESTERN STATES LIFE
INSURANCE COMPANY, Appellee.

No. 8164.

Court of Civil Appeals of Texas,
Amarillo.

Aug. 23, 1971.

Rehearing Denied Sept. 20, 1971.

Robert L. Templeton & Associates, Inc., R. C. Hamilton, Amarillo, for appellant.

Gibson, Ochsner, Adkins, Harlan & Hankins, W. P. Sturdivant, Amarillo, for appellee.

ELLIS, Chief Justice.

This is an appeal from a judgment non obstante veredicto rendered by the trial

court setting aside the jury's findings that the agent-assistant manager of the defendant-appellee insurance company had apparent authority to bind the company by his oral representation to plaintiff-appellant that when she paid her first premium she was covered by a certain major medical health and accident insurance policy.

Affirmed.

Appellant, Winona E. Roberts, brought suit against appellee, California-Western States Life Insurance Company (hereinafter called California-Western) to recover certain damages for injuries sustained by her as a result of an automobile accident that occurred on July 16, 1969. Although no policy of insurance had ever been issued or received by appellant, she alleged that several weeks prior to the accident she had made application for a certain policy of health and accident insurance, paid the initial premium and was told by the agent-assistant manager of the insurance company that she was covered from the time of her payment of the premium. Her suit was brought for the amount of applicable coverage for damages had the policy been issued, together with attorney's fees and the twelve percent statutory interest, on the grounds that appellee was liable therefor by reason of apparent authority of the agent-assistant manager and on the ground that the company is estopped to deny the coverage. Appellee denied liability on the policy, answering by special and general denials of the existence of any contract of insurance between appellant and appellee. The trial was to a jury, who, after the presentation of the evidence, answered the special issues submitted and made the following findings: (1) that appellee by its course of conduct had led appellant to reasonably believe during the times material prior to the accident that she was covered by a policy of insurance; (2) that appellant relied on such conduct to the extent that she believed in good faith that she was covered by such policy of insurance at the time of the accident; (3) that appellee waited an unreasonable length of time before notifying appellant the policy of insurance would not be issued; (4) that appellant would not have secured similar insurance from another company to cover her injuries sustained in the accident had she been notified prior to the date of the accident that appellee would not issue the policy; (5) that Billy R. Oakley, who took her application for the insurance represented to appellant that when she paid her first premium she was covered by the insurance; and (6) that Billy R. Oakley had apparent authority from the insurance company to make such representation. The court instructed the jury that the term "apparent authority" means such authority as a reasonably prudent person, situated as was the appellant, using diligence and discretion, *in view of the conduct of appellee, California-Western States Life Insurance Company,* would naturally and reasonably suppose Billy R. Oakley to possess at the time in question. (emphasis added.)

Appellee submitted its motion for judgment non obstante veredicto on the grounds that the issues regarding the apparent authority of Oakley to bind the insurance company by the oral representation that appellant was covered by insurance at the time she paid her first premium should not have been submitted and that there is no evidence to support such findings. The court granted the motion, and judgment non obstante veredicto was entered that appellant take nothing by her suit. From such judgment appellant brought her appeal on seven points of error. Appellant appears to have conceded want of actual authority, and no issues were requested or submitted on that ground.

By the first three assignments of error, appellant urges that the trial court erred in setting aside the jury's findings on apparent authority and rendering judgment for appellee notwithstanding the verdict. The remaining four points deal with appellant's contention that appellee is estopped to deny the insurance coverage.

The undisputed evidence discloses that Billy R. Oakley who was employed by California-Western at the time of the transactions involved in this suit, had, during the year of 1968 and prior to such employment, become acquainted with Mrs. Roberts at her home through a mutual friend who had indicated to Oakley that Mrs. Roberts and husband were interested in securing insurance. At this time Oakley was employed by an insurance company other than the one involved in this suit. An application for insurance for appellant's entire family was turned down by that insurance company due to the uninsurability of Mr. Roberts, shown as the husband in the application. Oakley was subsequently employed by California-Western in March of 1969, and was assistant manager and soliciting agent of California-Western's Amarillo-Lubbock-Abilene territory with an office maintained in Lubbock, Texas. He did much work out of his private home in Amarillo, and he was working out of his Amarillo home for the period of time during which the dealings involving California-Western and the appellant occurred. Following a telephone call by the above mentioned mutual friend who advised Oakley that appellant was again interested in securing medical and hospitalization insurance, on April 29, 1969, Oakley went to appellant's home and there, with her assistance, filled out California-Western's standard form of application for such insurance coverage on Mrs. Roberts. The application as prepared was signed by the appellant and dated April 29, 1969. On May 7, 1969, appellant's check in the sum of $19.00 on a Dallas bank payable to California-Western was picked up by Oakley at appellant's home. Such check, together with an application for an insurance policy covering Mrs. Roberts was mailed to California-Western in Sacramento, California. The evidence disclosed that the application actually mailed to and received by California-Western, although bearing date of April 29, 1969, (along with the check) was not the application signed by appellant, but it was a different one

prepared by Oakley with the name of Robert I. Roberts, the purported husband of Mrs. Roberts, indicated as the applicant. (Roberts testified that he was not married to Winona Roberts, and that they were divorced in 1967.) The name "Robert Roberts" was signed thereon by Oakley in the space provided for applicant's signature. At the bottom of the company's standard application form signed by Mrs. Roberts which was never sent to the company was the company's standard receipt form attached by perforation. This receipt, stating among other things,

"*If the application above mentioned is approved at the Company's home office* * * * *the insurance* against accidental bodily injuries *shall be in force* as of the date upon the receipt, and insurance against disability by disease shall take effect in accordance with policy provisions; *if the application is not approved as above no insurance shall be in force* under said application and the amount declared in the application to have been paid to the agent shall be returned to the applicant by the Company * * *." (Emphasis added)

remained attached to the application form signed by Mrs. Roberts. The receipt form as described above had been detached from the standard application form which was actually received by the company, (together with the $19.00 check) showing the name Robert I. Roberts as applicant dated April 29, 1969, for coverage on Mrs. Roberts. The $19.00 check was cashed by California-Western in May of 1969.

According to the evidence, an account in a Dallas bank had been set up by Mr. Roberts between April 29 and May 7, 1969, in the name of Mrs. Winona Roberts for the express purpose of paying the initial premium and subsequent drafts to be drawn against the account for payment of future premiums as they accrued after issuance of the insurance policy. It was stipulated that the policy was never issued by California-Western, that on July 16, 1969, appellant received personal injuries in an automo-

bile collision and incurred substantial hospital expenses as a result thereof, and that California-Western subsequently denied any liability to appellant upon proper and timely demand by appellant's attorney. Mr. Oakley mailed a refund check for $19.00 to Robert I. Roberts (the applicant named on the policy application received by the company), together with a letter from California-Western stating that the application for insurance on Mrs. Winona Roberts had been turned down due to the fact that results of a required medical examination had not been received.

When the trial court rendered a judgment non obstante veredicto it was equivalent to a finding that there was no evidence to raise an issue for the jury on apparent authority. Rodriguez v. Higginbotham-Bailey-Logan Company, 138 Tex. 476, 160 S.W.2d 234 (1942). The pertinent evidence shall be reviewed in this light. In considering a "no evidence" point, we are required to consider only the evidence and the inferences which support the jury's findings and to reject the evidence and the inferences which are contrary to such findings in order to determine whether there was evidence to go to the jury on apparent authority. Renfro Drug Co. v. Lewis, 149 Tex. 507, 235 S.W.2d 609 (1950). In addition to the undisputed matters hereinabove mentioned, we shall consider other evidence, although disputed, tending to support the jury's findings with regard to the transaction between appellant and Oakley.

Among other matters, it is appellant's testimony that when Oakley picked up her check, on or about May 7, 1969, he told her that she was covered by the policy at that moment, that she would not be required to have a physical examination and that he was district manager of California-Western's Amarillo-Lubbock-Abilene territory. (It is undisputed that Oakley spent 50% of his time in a supervisory capacity, training new agents.) She further testified that when appellant telephoned Oakley and asked him why she had not received her policy in early June, Oakley told her not to worry, that it would take a few days for the policy to come in, and that she was covered already. She further stated that from May 7, 1969, the date of her payment, until July 16, 1969, the date of the accident which gave rise to her injuries, Oakley never advised her as to why she did not receive her policy. It is uncontroverted that California-Western did not directly notify her of any reason for non-issuance of the policy until at least a week after she was involved in the accident of July 16, 1969. It was Oakley's testimony that subsequent to the completion of the initial application, he (Oakley) noticed that California-Western required an application covering a married woman to be made by her husband as applicant. Oakley stated that, upon discovering this, he prepared another application with the name of Robert I. Roberts, appellant's purported husband, listed as applicant. The notation was made that Robert Roberts was to be "excluded" from coverage and Mrs. Roberts alone would be covered. Oakley then signed Mr. Roberts' signature on this second application and mailed it to the company. Appellant stated that she did not sign this second application nor did she ever see it. It is appellant's testimony that she did not receive a detached receipt from either the first application, which she signed, or the second application, of which she had no knowledge, when Oakley took her check for the initial premium. Also, Mr. Roberts testified that he was not present when either of the two applications was prepared, and that he never received any receipt whatsoever. Oakley admitted that Roberts did not authorize him to sign the application. As above stated regarding the two applications (both of which are in evidence), the first still has the receipt attached while the receipt is missing from the second.

Appellant's theory of recovery is that agent Oakley's principal, California-Western, placed its agent in such a situation that a person of ordinary prudence dealing with the agent would be justified in pre-

suming the authority claimed by the agent had been given.

■ "Apparent authority" is based on estoppel, and this arises but from two sources: First, the principal may knowingly permit an agent to hold himself out as having authority, and in this way the principal becomes estopped to claim that his agent does not have such authority; second, the principal may knowingly or by want of ordinary care so clothe the agent with indicia of authority as to lead a reasonably prudent person to believe that he actually has such authority. Great American Casualty Co. v. Eichelberger, 37 S.W. 2d 1050, 1053 (Tex.Civ.App.—Waco 1931, writ refused); Continental Oil Company v. Baxter, 59 S.W.2d 463, 465 (Tex.Civ.App. —Eastland 1933, no writ). In Bolin v. Pacific Finance Corporation, 278 S.W.2d 879 (Tex.Civ.App.—Amarillo 1954, no writ), at page 883, what we believe to be the correct rule was stated as follows:

"When an apparent authority is claimed to arise from representations or conduct, *the acts and statements of the principal must be looked to for the requisite foundation and not those of the agent*; the former alone can give rise to authority of this character; the latter are never in themselves sufficient for that purpose. * * * The powers which the agent pretends to have, or assumes to exercise, are inoperative as a basis for ostensible authority when the principal is not affected by knowledge of them and does not validate them by acquiescence or assent; and no mere combination of circumstances which may, *without the principal's participation*, mislead third persons, however reasonably, into a false inference of authority affords a sufficient predicate for apparent authority. * * * " (Emphasis added)

■ From a review of the record in this case, we find no evidence that California-Western was aware of representations of authority made by Oakley. It is obvious that the intended procedure was for the application to be filled out and the applicant to receive the receipt—torn from the bottom of the application he had just signed—before the principal was to ever receive the applicant's money and his application for insurance. Also, there was a limitation on the manner of acceptance by the principal, California-Western, in that approval of the policy application by the principal was called for before the policy could become effective as prescribed in the language of the application form.

From this, we conclude that there was no evidence of probative force that California-Western knowingly permitted agent Oakley to represent to customers that he could by oral promises bind California-Western to an insurance contract before the company accepted the application and issued a policy.

■ We next reach the question of whether there is any evidence that California-Western knowingly or by want of ordinary care so clothed agent Oakley with indicia of authority as to lead a reasonably prudent person to believe that he actually had authority to orally bind his principal, California-Western, to a contract of insurance before the above outlined application procedures were carried out. We are confronted at the outset with the fact that the sole demonstrative indicia of Oakley's authority with which appellant was confronted through any direct action of California-Western was the printed application for insurance which she signed. That particular indicia could not have been construed by a reasonably prudent person to have been meant to convey the opposite of what the printed matter contained therein clearly stated—that the insurance application had to be approved by the home office before an insurance policy would be in effect. There is no pleading or proof of any excuse for her failure to read the application which she signed. She cannot, therefore, be heard to say she did not know of such stipulation when she signed the application. Southern Surety Co. v. Benton, 280 S.W. 551 (Tex.Com.App.1926). It is

here noted that her contacts with Oakley concerning the insurance applications were on a personal acquaintance basis, at her home, both as to her original insurance application with the other company and the transactions involved here. There is no evidence that she ever saw any of the corporation offices, ever met any officer or employee of the corporation other than Oakley, or that she had ever had any previous dealings with the corporation. Furthermore, in the light of the authorities above cited, we hold that whatever might have been the representations made by agent Oakley, those representations are not sufficient in themselves for purposes of binding California-Western under the doctrine of "apparent authority."

In support of her theory that the appellee is estopped to deny coverage, the appellant relies primarily on the case of Combined American Insurance Company v. Parker, 377 S.W.2d 213 (Tex.Civ.App.—Austin 1964, writ ref'd, n. r. e.). Among other matters, the court stated in the Parker case:

> " * * * By retaining the premium paid and remaining silent until the appellee [insured] had need for the insurance (which was within the time covered by the quarterly premium payment), the appellant [insurance company] is estopped to deny appellee a recovery under the terms of the sample policy. She was led to believe to her detriment, that she was insured. * * * "

We find, however, that in the Parker case, the agent for the insurance company was authorized to make contracts for, or to sell, *pre-issued* policies effective upon his own issuance to the applicant, whereupon the insurance company, upon receipt of the application mailed by the agent, could then determine whether the policy would be *continued in force.* In that case the insurance company delayed in notifying the applicant of its discontinuance of the policy which was already in force until the insured was injured. The court held that the insured was covered under the policy

previously issued because of the company's unreasonable delay in notifying the insured of cancellation of her policy. In support of the holding in Combined American Insurance Company v. Parker, the court cited the cases of Commonwealth Casualty Co. v. Coogle, 31 S.W.2d 362 (Tex.Civ.App.—Dallas 1930, no writ) and Perez v. Fort Worth Mutual Benevolent Ass'n., 291 S.W. 574 (Tex.Civ.App.—San Antonio 1927, no writ). In *Commonwealth,* liability against the insurance company arose because the insurer took the affirmative action of notifying the prospective insured that an agent would soon contact him to take care of his policy and then failed to notify the prospective insured that that agent had been discharged after the company became aware of his fraudulent misrepresentations to customers. And in *Perez,* the insurance company was held liable because the insurer-principal cancelled a valid policy without any notice to the insured and without returning the premium paid by the insured.

In the instant case, since no policy had ever been issued, California-Western was under no duty to cancel or give notice of a cancellation of a policy not issued in order to avoid legal obligation. Further, there is no evidence that California-Western was put on notice that agent Oakley was making any unauthorized representations with regard to the transactions with the applicant, Mrs. Roberts. It is therefore our opinion that the Parker case relied upon by appellant is clearly distinguishable upon the facts and the holding therein is inapplicable to the instant case.

 It appears well settled that if an insurer places a stipulation in an application for insurance, it is valid as a limitation on the means of acceptance of the contract by the insurer. Smith v. Rio Grande Nat. Life Ins. Co., 227 S.W.2d 579 (Tex.Civ.App.—Fort Worth 1950, writ ref'd); Modern Woodmen of America v. Owens, 60 Tex.Civ.App. 398, 130 S.W. 858 (1910, no writ). Also, it is the general rule in Texas that mere delay or inaction in processing an application for insurance does not

give rise to an acceptance by the insurer of the prospective insured's application, or establish an insurer-insured relationship between the parties. Protective Mut. Benefit Ass'n. v. McCuistion, 103 S.W.2d 138 (Tex. Com.App.1937); American Life Ins. Co. v. Nabors, 124 Tex. 221, 76 S.W.2d 497, 502 (Tex.Com.App.1934, opinion adopted). Also see Smith v. Rio Grande Nat. Life Ins. Co., supra; Amicable Life Ins. Co. v. Neale, 226 S.W.2d 479 (Tex.Civ.App.— Fort Worth 1950, writ ref'd n. r. e.); Brownwood Benev. Ass'n. v. Maness, 30 S.W.2d 1114 (Tex.Civ.App.—Eastland 1930, writ ref'd). Further, the delay of action on an application accompanied by retention of premiums, has been held inadequate to show an acceptance by an insurer. Brownwood Benev. Ass'n. v. Maness, supra; Victory Life Ins. Co. v. Ferrell, 24 S.W.2d 774 (Tex.Civ.App.—San Antonio 1930, no writ). It is here noted that we find no evidence in the instant case to justify a conclusion that the principal possessed or was imputable with knowledge that its failure to receive the requested medical information (resulting in the delay and inaction in issuance of the policy) may have been occasioned by Oakley's unauthorized representations or conduct concerning this aspect of the transactions between the parties involved.

■ Regarding the creation of binding obligations for insurance coverage, the basic rule was well stated by the Texas Commission of Appeals in an opinion adopted by the Supreme Court of Texas in American Life Insurance Company v. Nabors, supra, as follows:

"* * * All of the authorities class insurance contracts, as such, as fundamentally the same as other contracts as regards to offer and acceptance. There is no contract unless and until the application for insurance is accepted by the insurance company. * * *"

As stated in the case of Victory Life Insurance Company v. Ferrell, supra, "A proposition or application becomes binding only when the insurer accepts the risk of the insurance applied for, and the acceptance must be actual, evidenced by some act of the insurer, and from which it cannot recede without liability." Further it has been held that in Texas contract rights cannot be created by estoppel. Southland Life Insurance Company v. Vela, 147 Tex. 478, 217 S.W.2d 660 (1949). Thus, estoppel serves to prevent a party's conduct and actions from operating as a denial of the right of enforcement of a contractual obligation already created.

■ After reviewing the record in the light favorable to the jury's findings, as required, and in view of the principles above set out, we hold that there is no evidence of probative force to support appellant's claim that she is entitled to recover from the insurance company under the doctrine of estoppel (and its corollary, apparent authority). The company's employment of Oakley as "assistant manager" of the Lubbock office, with supervisory duties in connection with training new agents, and as agent to take applications for insurance subject to approval by the company, and the delay in returning the premium and application under circumstances occasioned by Oakley's conduct and representations of which the principal was not aware, could not properly operate to estop California-Western from asserting Oakley's lack of authority to bind the company with oral agreements of which it had no knowledge and contrary to the terms set out in the applications, or estop the principal from asserting its own lack of acceptance of the insurance contract. Great American Cas. Co. v. Eichelberger, supra. We, therefore, overrule appellant's contention that appellee is estopped to deny coverage.

In view of our holding with respect to the questions of "apparent authority" and estoppel, we deem it unnecessary to discuss the remaining points set out in the briefs.

The judgment of the trial court is affirmed.