**UNITED TRAVELERS INSURANCE COMPANY, Appellant,**

v.

**Eldon N. PERKINS, Appellee.**

No. 6222.

Court of Civil Appeals of Texas, Waco.

Jan. 8, 1981.

Rehearing Denied Jan. 29, 1981.

L. B. Slagle, G. Lee Haney, Law Offices of L. B. Slagle, Brownwood, for appellant.

Keith Woodley, Sudderth, Woodley & Dudley, Comanche, for appellee.

HALL, Justice.

Defendant-appellant United Travelers Insurance Company is a fraternal benefit society. It has fourteen lodges, all located in Texas, and its home office is in the City of Brownwood. Any person desiring membership in a lodge must apply for a policy of insurance with defendant. Defendant will underwrite a policy for any amount up to $100,000.00, but because of defendant's limited reserves and certain regulations imposed by the Texas Insurance Commission, any portion of a policy in excess of $1,000.00 is reinsured by defendant with Republic National Life Insurance Company of Dallas. Under defendant's contract with Republic, where reinsurance will be involved, the application must be sent to Republic by defendant and approved by Republic before defendant may issue the policy. An applicant is never informed by defendant about the fact of reinsurance by Republic, nor that the application must be approved by both Republic and defendant before the policy may be issued.

Defendant's Lodge 10 is located at Teresa's Steak House in the City of Hamilton. Teresa's Steak House is owned and operated by Mrs. Imogene Little, who is a member of and soliciting agent for defendant. On May 13, 1978, Cynthia Elaine Perkins, wife of plaintiff-appellee Eldon Perkins, applied with Mrs. Little for membership in Lodge 10, and executed a written application for a policy of life insurance with defendant for $2,000.00. Plaintiff was designated as beneficiary. Plaintiff and Mrs. Perkins acted together in furnishing and transcribing the information required in the application. Both either read or had the opportunity to read the application in full. The application, signed by Mrs. Perkins, contained the following provision, among others:

"I [applicant] agree on behalf of myself and any person or persons, firm or corporation, who may have or claim any interest in any insurance issued on this application as follows:

"(1) The insurance hereby applied for shall not take effect until the policy is actually delivered to and accepted by me during my life and good health, and the first premium thereon actually paid to and accepted by the company, or its duly authorized agent."

Mrs. Little also signed the application as witness and as defendant's "soliciting agent." Mrs. Little did not tell plaintiff and Mrs. Perkins "that there would be a condition that some other insurance company would have to approve the application before a life insurance policy would be issued"; and she did not tell them "that there would be any waiting period whatsoever before [Mrs. Perkins] would be covered by life insurance."

Plaintiff and Mrs. Perkins delivered the application and $36.18 in cash to Mrs. Little. The cash deposit represented $30.18 for the first year's premium on the $2,000.00 policy and *$6.00* for Mrs. Perkins's membership dues in Lodge 10. Mrs. Little issued a receipt for the $36.18 on a form provided by defendant. The receipt was headed with defendant's name and address across the top, was designated "Temporary Premium Receipt" directly under the head, and contained the words "Name of Insured: Cynthia E. Perkins." The application and the total deposit of $36.18 were transmitted to defendant's home office, and they were received there within a few days after the application was executed. Under defendant's method of operation, the $6.00 lodge dues would be remitted to Lodge 10 when the policy was issued.

Upon receipt of the application and the cash deposit, defendant made an investigative report on Mrs. Perkins. The report favored issuance of the policy. Then, probably early in June, 1978, defendant sent copies of the report and the application to Republic. On August 28th, defendant received notification from Republic that the reinsurance had been approved by Republic on August 25th. However, on the same day that defendant received this information from Republic, August 28th, Mrs. Perkins was killed in an automobile accident. The policy was never issued by defendant.

On October 31, 1978, defendant mailed its check in the amount of $36.18 to plaintiff. The check stated on its face, "Refund of Premium on Applicant Cynthia E. Perkins, deceased. Full, Final, & Complete Settlement." In an accompanying letter defendant stated that the check constituted "return of premium paid on applicant Cynthia Elaine Perkins who became deceased before issue of policy." Plaintiff did not cash the check. In a letter to defendant dated January 10, 1979, plaintiff's attorney acknowledged receipt of the check by plaintiff; asserted that defendant's actions violated the Texas Insurance Code; demanded on behalf of plaintiff "that such policy of insurance on Cynthia E. Perkins be issued so that the appropriate claim for the proceeds

of the policy may be processed"; and stated that plaintiff would file suit if defendant did not meet plaintiff's demand within ten days.

Upon defendant's failure to issue the policy, plaintiff filed this suit. Plaintiff alleged that on May 13, 1978, a $2,000.00 policy of insurance was purchased on the life of Mrs. Perkins with defendant; that plaintiff was the beneficiary; that the premium was paid, and a temporary premium receipt was given by defendant; that Mrs. Perkins died accidentally in August, 1978; that in October, 1978, defendant attempted to return the premium, and thereby attempted to cancel the policy after the death of the insured; that in January, 1979, plaintiff demanded in writing that defendant pay the proceeds of the policy; and that defendant's "actions and conduct" in accepting the premium payment, and [thereafter] attempting to deny the existence of the policy, refusing plaintiff's claim for the policy proceeds, attempting to refund the premium "several months" after it was paid to defendant and "several months after the death of the insured," and attempting to repudiate and cancel the policy, were false, misleading or deceptive acts or practices within the provisions of Section 16 of Article 21.21, Texas Insurance Code, which incorporates the terms of Section 17.46 of the Texas Deceptive Trade Practices Act (hereinafter DTPA) by reference. Plaintiff prayed that he recover $2,000.00 damages "for the amount of the policy," that his "damages be trebled" and that he recover reasonable attorney's fees under the provisions of the DTPA, and for general relief.

Defendant answered with a general denial, and it also specially denied that the policy was ever in force or effect because, never being issued, it was not delivered to Mrs. Perkins "during her life while in good health" as required by the stipulation in the application. Defendant tendered the $36.18 premium into the registry of the court.

The case was tried to the court without a jury. At the close of the evidence, plaintiff was permitted by the court to file a trial

amendment in which he alleged that "Defendant is estopped from denying that Cynthia Elaine Perkins was covered by life insurance in the amount of ($2,000.00 based on the actions and conduct of Defendant, its agents and employees, as shown by the testimony."

Judgment was rendered that plaintiff recover $2,000.00 from defendant, and that he recover costs of the trial.

Defendant requested the court to file written findings of fact and conclusions of law upon which the judgment was based; and the court complied. The findings pertinent to this appeal are these:

1. On May 13, 1978, plaintiff purchased a $2,000.00 policy of insurance on the life of Mrs. Perkins, and paid the first year's premium on the policy.

2. Defendant accepted the premium and used it for an unreasonable length of time before attempting to return or refund the premium on October 31, 1978; and defendant waited an unreasonable time "before actually issuing a written policy."

3. Defendant represented to plaintiff that Mrs. Perkins was insured as of May 13, 1978; plaintiff relied upon the representation to his detriment by paying the first year's premium; and the representation was false.

4. Plaintiff was damaged by defendant's fraudulent conduct.

5. The actions and conduct of defendant in accepting the premium and thereafter attempting to deny the existence of the policy, refusing plaintiff's claim for the policy proceeds, attempting to refund the premium several months after the premium was paid and several months after the death of the insured, "is unconscionable conduct."

The court also filed these conclusions of law:

1. Defendant is estopped from denying the life insurance policy in the sum of $2,000.00 on the life of Mrs. Perkins.

2. All of the elements of fraud are established.

The record also contains a complete statement of facts.

Defendant brought this appeal. It asserts (1) that the policy was never effected because it was not delivered during the lifetime of Mrs. Perkins as required by the stipulation in the application; (2) that, as a matter of law, defendant was not estopped by its actions to deny the existence of the policy; (3) that there is no evidence of a fraudulent representation nor reliance thereon by plaintiff; and (4) the trial court did not err in refusing to award plaintiff treble damages under the DTPA and the Insurance Code.

Plaintiff asserts that the $2,000.00 judgment on the policy was proper under § 17.46 and § 17.50(a)(3) of the DTPA, but he contends by cross point that the court erred in failing to award him treble damages and attorney's fees under the pertinent provisions of the DTPA and the Insurance Code. He requests us to render judgment in his favor for $6,000.00 treble damages, and to sever and remand for trial the issue of attorney's fees.

■ We agree with defendant that the record does not support a recovery under the DTPA and the Insurance Code. Nevertheless, it is the rule that an appellate court must sustain the judgment of a trial court if it is correct on any theory of law applicable to the case. *Gulf Land Co. v. Atlantic Refining Co.*, 134 Tex. 59, 131 S.W.2d 73, 84 (1939). For this reason, we must also decide if the judgment as rendered is correct under the record. We hold it is not, and we reverse the judgment.

■ The trial court found that defendant falsely represented to plaintiff that the policy was effective on May 13, 1978, and that the premium was paid in reliance thereon. There is no evidence supporting these findings. The only evidence fixing the effective date of the policy was the statement in the application that the policy would not take effect until it was delivered to Mrs. Perkins. Plaintiff testified that Mrs. Little did not tell him and Mrs. Perkins "that

there would be a condition that some other insurance company would have to approve this application before the policy would be issued," and that she did not tell them "that there would be any waiting period whatsoever" before the policy would be effective, but there is no evidence that they inquired of Mrs. Little about these matters or were at all concerned with them. Plaintiff's testimony does not support the finding that defendant represented that the policy would be effective immediately. Accordingly, the finding of reliance thereon is also unsupported by proof.

In the case of *Brownwood Benev. Ass'n v. Maness*, 30 S.W.2d 1114 (Tex.Civ.App.—Eastland 1930, writ ref'd), the application for insurance provided (like ours does) that the policy of insurance would not be effective unless it was delivered to the applicant "during [his] lifetime and good health." The first year's premium and the applicant's fee for membership in the defendant Benevolent Association were forwarded with the application to the Association. The application was incomplete under the Association's rules, because it was not signed by the soliciting agent. A second application was sent to the Association, but the applicant died before the policy was issued. Without knowledge of the death, the Association issued the policy. The beneficiary brought suit on the policy. The Association had retained the payment for the premium and the membership fee pending the receipt of a proper application and until it had determined whether the policy should be issued, but it tendered the payment to the plaintiff beneficiary upon the trial of the case. The trial court rendered judgment for the beneficiary on the policy. The Court of Civil Appeals reversed the judgment and rendered judgment that the beneficiary take nothing on the policy. The Court held that "no contract of insurance was ever consummated," because the policy was not delivered "during [the applicant's] lifetime and while in good health" as required by the stipulation in the application. The Court also held that delivery being essential to the completion of the contract, "delay caused by the acts of [the Associa-tion] would *not in law take the place of* such delivery." Quoting several authorities, the Court said, "No delay, reasonable or unreasonable, will constitute a contract in the face of the stipulation that it shall not take effect until delivered. . . . Delay will not be treated as an acceptance. . . . If the applicant was dissatisfied and the delay unreasonable, he could have recovered the money which he had paid. . . . No negligence, no delay, reasonable or unreasonable, on the part of the insurance company, could make a contract, in the face of the stipulation."

■ Under the undisputed facts of our case, the policy sued upon was never in force because, not being issued, it could not have been delivered and was not delivered during the lifetime of Mrs. Perkins as required by the application. Thus, as a matter of law, defendant was not estopped from denying the existence of the policy. "Estoppel serves to prevent a party's conduct and actions from operating as a denial of the right of enforcement of a contractual obligation already created." *Roberts v. California-Western States Life Insurance Company*, 470 S.W.2d 719, 726 (Tex.Civ. App.—Amarillo 1971, no writ).

■ At all times pertinent to our case, § 17.50 of the DTPA (V.T.C.A., Bus. & C. § 17.50) provided that a consumer could maintain an action upon "any unconscionable action or course of action by any person" which was the producing cause of actual damages, and that, if successful, the consumer was entitled to treble damages and attorney's fees. Plaintiff asserts that in view of the court's finding that the defendant was guilty of "unconscionable conduct" he is entitled to treble damages and attorney's fees under the Act. We disagree. The finding of unconscionable conduct was based upon the trial court's assumption that the policy was in force. As we have held, this determination was incorrect. As a matter of law, defendant could not have been guilty of "unconscionable conduct" within the meaning of the Act by denying the existence of a policy which was

never effected, or by refusing plaintiff's claim on the asserted policy, or by holding the premium for two months after the applicant's death before tendering refund, especially where no demand for refund had been made by plaintiff.

Section 16 of Article 21.21 of the Texas Insurance Code (V.A.T.S. Insurance Code, art. 21.21) provides in part that where a person who has been injured by an act defined as an unlawful deceptive trade practice in § 17.46 of the DTPA, committed by another in the business of insurance, the injured person may sue for his damages under this Section, and, if successful, may recover three times the amount of actual damages, reasonable attorney's fees, and court costs. In support of his action for treble damages and attorney's fees under this statute, plaintiff invokes the following provisions of § 17.46:

> (b) The term "false, misleading, or deceptive acts or practices" includes, but is not limited to, the following acts:
>
> (1) passing off goods or services as those of another.
>
> (2) causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services.
>
> (3) causing confusion or misunderstanding as to affiliation, connection, or association with, or certification by, another.
>
> . . . . .
>
> (5) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he does not.
>
> . . . . .
>
> (7) representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.
>
> . . . . .
>
> (12) representing that an agreement confers or involves rights, remedies, or

obligations which it does not have or involve, or which are prohibited by law.

Plaintiff argues that Mrs. Little's failure to tell plaintiff and Mrs. Perkins that another insurance company would underwrite a portion of the policy and would have to approve the application, or that there would be any waiting period whatsoever, brings defendant within the deceptive acts or practices listed above. We cannot agree. As we have said, these matters were not inquired about by plaintiff and Mrs. Perkins, and there is no evidence that any representations were made about them by defendant. Plaintiff and Mrs. Perkins jointly transcribed the required information into the blank spaces of the application and either read the application in full or had the opportunity to do so, and there is no evidence that Mrs. Perkins's execution of it was obtained by any trick or fraud. Under those circumstances, they were charged with knowledge of the stipulation in the application that the policy would not be effective until it was delivered to Mrs. Perkins in her lifetime. *Thigpen v. Locke* (Tex.1962) 363 S.W.2d 247, 253; *Indemnity Ins. Co. v. W. L. Macatee & Sons*, 129 Tex. 166, 101 S.W.2d 553, 556 (1937); *Morrison v. Insurance Co. of North America*, 69 Tex. 353, 6 S.W. 605 (1887). The record also shows without dispute that reinsurance like that in question is a common and accepted practice in the insurance industry; and when defendant was making proof of that fact, the trial judge stated that he would take judicial notice of it. The record does not establish that any act or conduct of defendant caused any confusion or misunderstanding between the parties or that they otherwise fit within any of the provisions of § 17.46 relied upon by plaintiff; or that plaintiff suffered any damages by reason of any act or conduct of defendant.

Defendant's points and contentions are sustained; plaintiff's cross point is overruled.

Although the trial court properly denied an award of damages on plaintiff's theory of deceptive trade practices, there is no basis in the record for the judgment rendered. We therefore reverse the judgment.

Plaintiff was entitled to the benefit of defendant's tender of the premium, which continued into the trial. Defendant acknowledges this in an alternative prayer in its brief. Accordingly, judgment is here rendered that plaintiff shall recover $36.18 from defendant.

The costs of the trial and this appeal are assessed against plaintiff.